THE STATE ex rel. JOHN McWILLIAMS, Prosecuting Attorney of Scott County, Appellant, v. LITTLE RIVER DRAINAGE DISTRICT et al.

In Banc, December 21, 1916.

1. **EQUITY: Relief: Covered by Petition and Proof.** The trial chancellor is not bound by the terms of the petition's prayer for relief, but if the petition and proof show plaintiff entitled to general relief he should grant any appropriate relief, especially if the petition contains a prayer for general relief.

2. **NO ASSIGNMENTS OF ERROR: Considered Nevertheless.** Although the Supreme Court would be warranted in treating as waived some of the points urged in the petition, because the briefs contain no assignment of errors or any particularization setting forth upon what point or points the trial chancellor failed to follow the law, yet if respondent does not urge or raise the waiver and the matters involved affect numerous counties, the court, solely on account of the public interest involved, will consider them *ex gratia*.

3. **DRAINAGE DISTRICT: Ditch Through Public Road.** The General Assembly, by Sec. 5513, R. S. 1909, and the Act of 1915, Laws 1913, p. 251, sec. 30, granted to a drainage district a right of way for its ditches and drains through the public highways of the State.

4. ———: ———: **Power of Legislature: Consent of County.** The Legislature has power to grant to drainage districts a right of way for their ditches and drains through the public roads of the county, without requiring, as a condition precedent, the obtaining of the consent of the county.

5. ———: ———: ———: **Counties.** Counties are but political and legal subdivisions of the State; and in constructing, vacating and repairing public roads, county courts are but agencies of the State; and the fact that for convenience in matters of administration the State has delegated certain powers over highways to counties and county courts, does not prevent the State from assuming control of its highways whenever and in whatever manner it may see fit.

6. ———: **Public Roads: New Servitude: Incompatible Use.** The State may not, through its Legislature, either trench upon private rights, or devote the public highways to a wholly incompatible use, or to a use which is not a public use, nor should it impose an additional public servitude upon the easement; but the use of a crossing over the easement in a public highway for a drainage canal is not an incompatible use of the highway, but is an allowable public use, and one within the power of the Legislature to authorize.

7. ———: **Public Corporations.** Drainage districts are public corporations, and their canals and ditches are devoted to and are therefore public uses.

8. ———: **Ditch Through Public Road: Bridge: Burden of Building on County.** The burden of building a bridge over a canal through a public road, constructed by a drainage district, organized in 1907, under the Circuit Court Act of 1905, and since operated and proceeding under that act, and not electing to come under the Act of 1913, is on the county, and not on the drainage district. [Following State ex rel. v. Chariton Drainage District, 252 Mo. 345.]

9. ———: ———: ———: ———: **Hardship: Remedy.** While the cost of building a bridge over a canal that cuts through a public road seems at times to produce a hard injustice and hardship upon the county, the remedy lies only within the control of the Legislature.

10. ———: ———: **Meaning of Words "Public Highway."** The term "public highway" used in the proviso found in Sec. 5513, R. S. 1909, means a dirt, macadamized, graveled or an improved public road on which pedestrians walk and over which ordinary wheeled vehicles are drawn and which is free to be used by all of the public without charge. As there used the words do not mean the track or right of way of a railroad.

Appeal from Scott Circuit Court.—*Hon. Frank Kelly,*
Judge.

AFFIRMED.

*John McWilliams* and *Ralph E. Bailey* for appellant.

(1) Injunction is the proper remedy. (a) Injunction will lie here because the damage proposed to the public highway will be a continuing one in depriving plaintiff of the use of a public thoroughfare and the damages would not be capable of an approximate assessment. Being entitled to the easement in the public highway, as defendants here admit, the law does not oblige plaintiff to submit to a tortious expropriation of it by defendants in exchange for such damages as a jury may see fit to give. Lakenan v. Railroad, 36 Mo. App. 372; Turner v. Stewart, 78 Mo. 480; Bank v. Kercheval, 65 Mo. 682; Echelkamp v. Schrader, 45 Mo. 505. (b) Injunction is the proper remedy to restrain obstruction of public high way. Lakenan v. Railroad, 36 Mo. App. 363; Craig v.

People, 47 Ill. 487; Corning v. Lowery, 6 Johns Ch. 439; Pettibone v. Hamilton, 40 Wis. 402; - Burlington v. Schwarzman, 52 Conn. 181. (2) An easement is subject to condemnation and the owner is entitled to compensation, as much so as if the land were taken to which the easement is appurtenant., 15 Cyc. 607, and authorities cited. Statutes of condemnation are strictly construed and the statute must be strictly followed. Leslie v. St. Louis, 47 Mo. 474; State v. Farrelly, 36 Mo. App. 282; Fore v. Hoke, 48 Mo. App. 254. (3) The easement held by the public or the county in its highways is a vested right. State v. Faith, 180 Mo. App. 484; State v. Culver, 65 Mo. 607; State v. Walters, 69 Mo. 463; Railroad v. Totman, 149 Mo. 657; Zimmerman v. Snowden, 88 Mo. 218; State v. Wells, 70 Mo. 635. (4) It does not require any provision of the statute to compel the restoration of a highway, and it is not even within the power of the General Assembly to place a burden upon the county which forces the county to levy a tax to meet it for the benefit of a drainage district where the ditch dug by the district is an artificial one and not an outlet for the natural flow of the water. Drainage Comrs. v. Highway Comrs., 220 Ill. 176; Morgan v. Schusselle, 228 Ill. 106; People ex rel. v. Railroad, 252 Ill. 372.

*Oliver & Oliver* for respondents.

(1) The appellant's action was properly dismissed. The county is not entitled to an injunction restraining the construction of Ramsey Creek Diversion Channel across the public road. The drainage district is not required to secure the consent of Scott County in order to construct a ditch across a public road in that county. State ex rel. v. Drainage District, 252 Mo. 345; Douglas County v. Drainage District, 139 N. W. 718; Heffner v. Cass and Morgan Counties, 193 Ill. 439, 58 L. R. A. 353; Rigney v. Fischer, 113 Ind. 313; Railroad v. People, 200 U. S. 561. The drainage district is given the right "to construct any of said works and improvements across, through or over any public highway . . . in or out of said district." Sec. 5513, R. S. 1909; Laws

1913, p. 23, sec. 30. (2) All bridges over the ditches of the drainage district must be built in accordance with the plans and specifications approved by the chief engineer of the district. The cost of constructing such a bridge, where it is a part of a public highway, must be paid for in this State by the county in which the bridge is located. This is so, even though there be no natural stream at the point of intersection of the road and drainage ditch. State ex rel. v. Drainage District, 252 Mo. 345. (3) The courts of last resort of some of the other states have had similar questions presented to them and the principles announced in the opinions are applicable in the case at bar. Douglas County v. Drainage District, 139 N. W. 718; Heffer v. Cass and Morgan Counties, 193 Ill. 439, 58 L. R. A. 353; Rigney v. Fischer, 113 Ind. 313. (4) The Legislature has the power to create drainage districts of the State. They are political subdivisions of the State, based upon an exercise of the police power of the State. They have for their purpose the reclamation of areas of low, marshy, wet and unhealthful lands, the bettering of the health of the State, and the betterment of the general welfare of the State. They are not local in their character. Land & Stock Co. v. Miller, 170 Mo. 253; Morrison v. Morey, 146 Mo. 561; Drainage Dist. v. Railroad, 236 Mo. 111; Houck v. Drainage Dist., 248 Mo. 382; Drainage District v. Turney, 235 Mo. 9; State ex rel. v. Drainage Dist., 192 Mo. 520; State ex rel. v. Bugg, 224 Mo. 552; State ex rel. v. Taylor, 224 Mo. 468. (5) It is a matter of discretion for the Legislature as to which of the two subdivisions of the State —the county or drainage district—it would require to pay for the bridge. Its purpose and use is entirely a public one in which the State is interested and over which it has control. The requirement that it shall be built by the county is constitutional. State ex rel. v. County Court, 34 Mo. 546; State ex rel. v. Mason, 153 Mo. 50; State ex rel. v. Owsley, 122 Mo. 68; State ex rel. v. Field, 119 Mo. 614; Eitling v. Hickman, 172 Mo. 258; State ex rel. v. Board of Education, 141

Mo. 45; Harris v. Bond Co., 244 Mo. 690; Elliott, Roads and Streets, secs. 509-511, 514-526. (6) There is no taking of private property within the meaning of the Constitution, as alleged by the appellant. The public roads of the State are not the private property of the several counties in which they are located; neither are they the property of the individual citizen thereof. They are public easements under the full control of the Legislature, which may authorize them to be used for other public or quasi-public agencies upon such conditions as it sees fit to impose. Douglas County v. Drainage District, 139 N. W. 718; Elliott on Roads and Streets (3 Ed.), sec. 509; Cooley, Constitutional Limitations (4 Ed.), pp. 734, 588; Railroad v. People ex rel., 200 U. S. 561.

FARIS, J.—This is a proceeding by injunction brought at the relation of the prosecuting attorney of Scott County, and for the benefit of that county, against the Little River Drainage District and the several individuals composing the board of supervisors and secretary of said district. The county (which we shall hereafter refer to as the plaintiff, for convenience) was cast below, and after taking the proper steps has appealed to this court.

The petition is exceedingly lengthy, as is likewise the answer of respondents; together these pleadings cover the first twenty-seven pages of a closely printed record in this cause. For the sake of brevity and to conserve space we shall content ourselves with a resume of these pleadings, which we apprehend will suffice to make clear the discussion we find ourselves compelled to make.

The defendant, Little River Drainage District, was organized on the 30th day of November, 1907, under that one of our several drainage statutes designated, to distinguish it from the others, as the "Circuit Court Act," and now to be found (with numerous amendments made since defendant district was organized), in the Revised Statutes of 1909 as section 5496 to 5541,

both inclusive. Many of the above-mentioned sections of this Circuit Court Act have been repealed and others enacted in lieu thereof; in fact, in 1913 the entire article was repealed and a new article enacted in lieu thereof (Laws 1913, p. 232); but with this condition of these statutes we have nothing to do in this case, for reasons which will hereafter more clearly appear.

The petition, after alleging the organization of this drainage district and the official character as supervisors and secretary thereof respectively of the several individual defendants, avers that defendant drainage district (which we shall hereafter for brevity refer to simply as defendant) filed on the 15th day of November, 1909, its "plan for reclamation," which said plan, among numerous other details not pertinent to the questions here vexing us, provided for the construction of a ditch or canal to be known (and in said plan of reclamation designated) as the "Ramsey Creek Diversion Channel," which it was intended and contemplated should cross a public highway in plaintiff county known as the Rock Levee Road, which highway runs from the town of Kelso in Scott County, to the town of Cape Girardeau in Cape Girardeau County. This Rock Levee Road was originally a toll road owned and operated by a private corporation, but upon the expiration by limitation of such private corporation that part of the Rock Levee Road here involved became (it is averred) the property of Scott County. It is alleged in the petition and admitted in the answer, that defendant will at a point in plaintiff county cut said Rock Levee Road in order to permit the passage of said diversion channel, and that the passage through said road of this diversion channel will necessitate the erection of an expensive bridge and expensive approaches thereto, which it is estimated will cost $10,000.

It is further charged, as a conclusion of law, that it is the duty of defendant district to construct at its own expense the necessary bridge and approaches

thereto, since it is averred there is now no creek, or river, or other natural water course traversing said Rock Levee Road at the point where it is proposed to cut said road to form a passage way for its said diversion channel; but on the contrary it is averred that the waters of said Ramsey Creek flow westward and southward and away from the Rock Levee Road, and not eastward, or toward and across the same.

It is further averred that no consent to so cut said Rock Levee Road has been obtained and that no steps have been taken to obtain from the county court of plaintiff county any consent to the cutting thereof, and that no agreement has been entered into by defendant district to save harmless the plaintiff county and the citizens thereof from the expense of building a bridge and approaches thereto, which are made necessary solely on account of the cutting of said public highway by defendant. It is further alleged that while there are 266 thousand acres of land in plaintiff county, only some 15 per cent of such acreage will receive any benefit from the said Ramsey Creek Diversion Channel or any other of the public drains, ditches, canals and levees constructed and to be constructed by defendant, and that therefore, while only some fifteen per cent of the acreage of land in plaintiff county will be benefited, the whole thereof will be taxed for the building of the said required bridge and its approaches, and that therefore some 85 per cent of the real property taxed in plaintiff county will bear a burden from which no benefits whatever accrue.

It is further alleged that the report of the commissioners appointed pursuant to statute to assess damages and benefits upon the organization of defendant district, contained no reference to the fact that a bridge would be needed across the said public road in order to span the Ramsey Creek Diversion Channel, and that for this reason plaintiff county did not appear and except. It is further averred that the cutting of said road by defendant without the construction over said cut of a proper bridge and approaches thereto

would be and constitute a public nuisance from which the general public will suffer great injury, damage and inconvenience, and that plaintiff has no remedy at law.

The prayer is that defendant be enjoined from cutting said Rock Levee Road till they shall have complied with their (alleged) legal duty in the matter of obtaining consent to that end from plaintiff and until they shall have entered into an agreement with plaintiff county court to save plaintiff and the citizens thereof free and harmless from any expense arising from bridging over and making approaches to the Ramsey Creek Diversion Channel, and "for such other and further relief as to the court shall seem just and proper."

The answer in substance admits all of the allegations made by plaintiff in its petitions, save and except the questions (a) whether the expense of building the necessary bridge over Ramsey Creek Diversion Channel and the approaches thereto shall fall upon plaintiff county, or upon defendant district, and matters germane to this main question; (b) whether Ramsey Creek had, till its course was blocked in 1854 by the construction of the Rock Levee Road, ever flowed (wholly or in part) to the Mississippi River across the present site of said highway, and (c) whether the filed plan for reclamation showed the future necessity of a bridge over the Ramsey Creek Diversion Channel. The answer is long and it would but cumber the record for us to recite it here in full. But this question of law and its above-mentioned corollaries of fact with the germane constitutional questions (of which more hereafter) are left as the only questions for our determination.

The testimony taken upon the trial of the case below took a fairly wide range. But one phase of this testimony outside of the conceded questions of law left to us in the pleadings, interests us here. That question is raised by the answer and is, to-wit, whether there is or has ever been any flow of water from

Ramsey Creek under the Rock Levee Road, or whether prior to the construction of the Rock Levee Road there was such flow across the present situs thereof. This question is important here for the reason that it is urged upon us that the law touching the respective duties of a given county and a given district vary according as the bridge made necessary by the construction of a drainage canal is over a natural water course or is made necessary solely by the cutting of a drainage canal across a public highway at a point where before no water course existed, and therefore where, before, no necessity existed for the construction, or maintenance of a bridge of any sort.

Ramsey Creek is a small stream which has its source in the hills of plaintiff county near Benton, and flows thence in a northerly direction to the edge of certain bluffs which skirt a swamp across which the Rock Levee Road is constructed. This creek reaches this swamp at a point measurably one thousand feet west of the point at which the Rock Levee Road departs from the bluffs to cross the swamp toward the town of Cape Girardeau. There was much contention shown by the proof offered as to whether Ramsey Creek, after reaching the edge of the bluffs and entering the swamp in question, flowed westwardly and southwardly and away from the Mississippi River, or whether it, at least prior to the construction of the Rock Levee Road, flowed eastwardly and across the present site of said road and thence into the Mississippi River. Some proof came in that at least one branch of this creek had, before the Rock Levee Road interfered with its course, flowed eastwardly into the Mississippi River, but that it had not so flowed since the Rock Levee Road was constructed.

There was proof that there still existed a well-defined channel or depression which had been part of the creek channel for a considerable portion of the distance between the Rock Levee Road and the Mississippi River.

It was contended on the part of the defendant that the Rock Levee Road had anciently stopped up the eastward channel of Ramsey Creek and had prevented it from debouching its waters into the Mississippi River and had caused it partially at least to pond its waters in the swamp and against the Rock Levee Road. The proof both from witnesses and from divers exhibits offered in evidence, tends to show that these contentions of defendants are correct; but on the other hand it appears that Ramsey Creek has not to any appreciable extent (a few flood periods excepted) emptied through this old eastern channel into the Mississippi River (crossing in its course the right of way of the old toll road, which has now become the Rock Levee Road) since 1854, when this road was constructed across this ancient channel.

Upon the question of notice to plaintiff county of the future need of a bridge over Ramsey Creek Diversion Channel at the point in question, the proof offered shows that the location and course of this channel, its width throughout such course, its minimum depth and its right of way, were all set forth in the filed plan of reclamation in the most minute detail.

There were of course no instructions asked or given on either side, since the case is one sounding in equity. The general finding of the learned court *nisi* was in favor of defendants, refusing to plaintiff the relief prayed for, thus holding in effect that it is the duty of plaintiff county to construct the required bridge, together with the approaches thereto at its own proper expense, and that the several constitutional questions attempted to be raised by plaintiff are of no legal avail upon that point.

I. Some slight question seems to be raised by counsel for defendant in the learned brief filed with us upon the point whether injunction is the proper remedy to prevent defendant from cutting and destroying, for

the time-being, a public highway. The question thus insinuated seems to turn, in the view of learned counsel for defendant, more upon the nature of the prayer of plaintiff's petition herein than upon any otherwise meritorious basis. The point thus made by counsel for defendant loses sight, we think, of the fact that the court *nisi*, sitting as a chancellor, was not bound by the terms of plaintiff's prayer for relief, if its pleadings and proof showed it entitled to general relief, or other and different relief, *a fortiori*, since plaintiff prays generally "for such other and further relief as to the court shall seem just and proper." [Cox v. Esteb, 68 Mo. 110; Schneider v. Patton, 175 Mo. 684.]

*Equitable Relief.*

Granting therefore for the sake of argument that a court of equity may not be able to afford by its decree the precise relief prayed for by plaintiff herein, yet if its petition and the proof adduced show it to be entitled to any relief in equity, it became the duty of the court *nisi* under the condition of the pleadings here to grant that relief. It would seem that under the facts and circumstances here if we should hold that it is the duty of defendant district to construct at its own proper expense the bridge and approaches necessitated by this cutting through a public highway in plaintiff county, then defendant ought to be enjoined from doing this until such time at least as it shall perform the duty of constructing the bridge and approaches aforesaid, even though, as is probable, practical engineering difficulties render the expressed sequence of the doing of these acts *economically* impracticable. But this point is not so raised as to merit our serious discussion of it; therefore we do not squarely pass on it: First, for the reason forecast, that it is not so raised by defendant as to make it necessary for us to decide it; and, second, because from the view we take of the case it should ride off upon another theory.

II.   Certain constitutional questions are raised in the petition, but since these are neither assigned as error nor specifically referred to in the brief, we are warranted in assuming that these questions are waived or abandoned.   Besides, these constitutional questions were all raised, discussed and decided in the case of State ex rel. v. Chariton Drainage District, 252 Mo. 345, wherein the curious may read them.   We would in fact be warranted under our rules in treating as waived some other of the points urged in the petition, since there are no specific assignments of error, or any particularization in the brief setting forth upon what point or points the trial court failed to follow the law.   But as counsel for respondent have not raised and do not urge this question, and since important matters are involved in the case affecting, we are told, numerous counties in the State, we will on account of the interest of the public solely, consider three of them *ex gratia.*

*Assignments.*

These questions unaffected by the constitutional questions raised *nisi,* will be decisive of the case, and they are, to-wit: (a) Has the Legislature granted by a public statute the right of way to drainage districts for their ditches and drains through the public highways of the State?   (b) If so, had the Legislature power so to grant a right of way over, on, along and across all the public highways of the State for the ditches and drains of the several drainage districts organized under the provisions of the "Circuit Court Drainage Act"?  and (c) if it has this power and a public highway be cut for the passage of a ditch, upon which municipal body does the cost of bridging such cut fall?

The language used in the Act of 1905 (now sections 5496 to 5541, both inclusive, of our Revised Statutes) pertinent to this point, reads thus:

Ditch Through Public Road.
"The said board of supervisors shall have power and authority to construct any of said work and improvements across, through or over any public highway, railroad right of way, track. grade, fill or cut, in or out of said district, and shall have the right and power to hold, control and acquire, by donation or purchase, and, if need be, condemn any real estate, easement, railroad right of way, sluiceway, reservoir, holding basin or franchise in or out of said district for right of way for either the main channel of said proposed ditch of said district or for a sluiceway, reservoir, holding basin or for any of said works or improvements, or for materials used, or to be used, in constructing and maintaining said works and improvements for the drainage, reclamation and protection of lands in said district." [Sec. 5513, R. S. 1909.]

Similar provisions, or provisions to the same end, persuasive, but not pertinent for defendant's lack of electing to proceed under them, are found in the amended act, of which apposite parts thereof read thus:

"All drainage districts shall have full authority to construct and maintain any ditch or lateral provided in its 'plan for reclamation,' across any of the public highways of this State, without proceedings for the condemnation of the same, or being liable for damages therefor." [Laws 1913, sec. 30, p. 251.]

But learned counsel, so far as we are able to understand their attitude in this behalf, concede that the Legislature has, by the part quoted of section 5513, supra, granted this power to the drainage districts of the State; they strenuously moot the point, however, whether such donation lies within the province and power of the Legislature. Since the first point is not denied by counsel, we will not examine it at all, but will start from counsel's concession as a premise.

III. Coming then to the second question mooted, that of the power of the Legislature to grant to drainage districts the use of the public highways, we

think there can exist no serious doubt that the Legislature has such power. Any other view must of neces-

**Power of Legislature Over Public Roads.**

sity be bottomed upon a misconception of the legal attitude which the several counties and the county courts thereof sustain toward the public highways of the State, as also, in a measure, of the nature of the counties themselves, which are but political and legal subdivisions of the State itself. [Sec. 12, art. 6, Constitution; Sec. 1, art. 9, Constitution; Gracey v. St. Louis, 213 Mo. l. c. 387.]

In opening, vacating, improving, repairing and dealing with the public highways, the several counties and the county courts thereof are but agencies, or agents of the State; acting from the very necessities of the cause by delegated authority. Such title as the several counties may have to the fee, or to the easements in the public highways which traverse them, or which are situate in them, is in a way held in trust for the whole people; that is, for the State itself; or more strictly speaking, they hold it in their character as parts of the State itself, of which the several counties are legal subdivisions, and the fact that for convenience of control in mere matters of administration the State has delegated certain powers over its highways to the counties as subdivisions of itself, and to the latter's agents, the county courts, does not prevent the State from assuming control of its public highways whenever and in whatever manner it shall see fit. Concededly, the State may not through its Legislature either trench upon private rights, or devote its public highways to a wholly incompatible use, or to a use which is not a public one. If it should superimpose an additional public servitude upon the easement, manifestly the private owner of the soil on which the original public highway easement is imposed would be aggrieved, but the latter question does not vex us here for reasons which are obvious.

So much being premised, we come to the question whether the use of a crossing over the easement in a

public highway for a drainage canal is both a public use and a use not incompatible with the use thereof as a public highway. The fact that drainage districts are public corporations and that their canals and ditches are devoted to and therefore are public uses, is too clear for discussion and has long been settled. [Morrison v. Morey, 146 Mo. 543; Carder v. Fabius River Drainage Dist., 262 Mo. 1. c. 556.] Manifestly, the question of incompatibility of use *vel non* must be approached from a point of view having due regard to the rule *ex necessitate rei*. For no practical system of drainage ditches could be devised which would not in its course repeatedly be forced to cross public highways.

In Nebraska, under a drainage statute reading thus: "Said district may dig ditches and drains under and across railroads and public highways," it was held in the case of Douglas County v. Papillion Drainage District, 139 N. W. 1. c. 718, that: "The public roads are not 'the property of "any" person.' They are public easements under the full control of the Legislature, which may authorize them to be used by other public or quasi-public agencies with or without such restrictions, as it may deem proper. [Elliott, Roads and Streets (3 Ed.), sec. 509.]"

Continuing, the above case quotes with approval a prior holding of the Supreme Court of Nebraska (Krueger v. Jenkins, 59 Neb. 641) apposite to the questions here confronting us, thus:

" 'The right of this litigation is one belonging exclusively to the public at large. Neither Douglas County nor its citizens have any peculiar interest in it. A county does not hold the legal title to county roads within its borders; it has no power of disposition over them; it has no proprietary interest in them; in performing the duties with which it is charged in connection with them, it acts as an agent of the State, and in the interests of the general public.' " [Alt v. State, 88 Neb. 259, 35 L. R. A. (N. S.) 1212.]

Without pursuing the matter further, it is clear that the Legislature had plenary power to grant to the drainage districts of the State the right of way for all drainage districts, canals, levees and dikes over and across the public highways of this State, without requiring, as a condition precedent, the obtaining consent thereto of the several counties of the State wherein the highway lies, or of the county courts of such counties. This, for the simple reason if for no other, that the principal ordinarily does not have to consult his agent as to the manner in which the principal deals with his own property, in which capacity of agent for the State itself, as we have seen, the several counties, through their county courts, deal with the public highways of the State.

IV. Which brings us to a consideration of the question whether it is the duty of the drainage district or that of Scott County to pay for the construction of a bridge over Ramsey Creek at the point where the diversion canal cuts the public highway.

We cannot make it too plain that we are not here considering the Act of 1913 (Laws 1913, p. 232 et seq.) or the effect of that act upon the reciprocal duties of counties and drainage districts touching the construction of bridges over drainage ditches and ca-

Cost of Building Bridge. nals. The respondent drainage district was organized in November, 1907, under the Act of 1905 (Laws 1905, p. 190 et seq.), and it has not, so far as the record before us shows, elected to proceed under the Act of 1913. But as was specially provided for by section 62 of the Act of 1913, it continues to operate and proceed under the original act (now Secs. 5496 to 5541, R. S. 1909), and the applicable amendments to said sections made in 1911 (Laws 1911, sec. 2, p. 221), though said sections were, as to any new districts desiring to be formed, absolutely repealed. This is so for the reason that section 52 of the Act of 1913 (Laws 1913, sec. 52, p. 263) provides for the reorganization of all drainage dis-

tricts *if they shall so elect,* except such as were organized under article 1 of chapter 41 of the Revised Statutes of 1909. Since the respondent district was organized, as the record shows, in 1907, it could only come under the provisions of the Act of 1913 (Secs. 52, 53, 54, 55, 56 and 57, Laws 1913) by electing so to do as therein provided, the which it has not done.

The question whether it is the duty of the county or of the drainage district to pay the cost of the bridge here in controversy, was decided by us in the case of State ex rel. v. Chariton Drainage District, 252 Mo. 345, construing section 5503, Revised Statutes 1909 (formerly Sec. 8253c, Laws 1905, p. 194). We have again gone carefully over this question, since learned counsel for appellant most strenuously insist that we were wrong in the case of State ex rel. v. Chariton Drainage District, supra, and urge that we re-examine it and overrule it. We have, however, upon a most careful examination, been confirmed in our former opinion. Concededly, however, the matter presents some difficulties, and (as the instant case makes manifest) seem sometimes to produce a situation of harsh injustice and hardship. But if this be true the Legislature controls the remedy. It lies in its power to so change the law as to put the burden upon the several drainage districts and to effectually remove it from the several counties. As so clearly pointed out in the Chariton Drainage District case, supra (which construed the identical statutes here vexing us), it has not done so by the statutes now before us in this case. For trespassing again briefly upon time and space to suggest a bit of additional argument, we observe that the proviso contained in section 5513, the applicable section of the law here under construction, reads thus:

"Provided, however, that if such bridge shall belong to any corporation, or be needed over a public highway or right of way of any corporation, the secretary of said board of supervisors shall give such corporation notice by delivering to its agent or officer, in any

county wherein said drainage district is situated, the order of the board of supervisors of said district declaring the necessity for the construction or enlargement of said bridge. A failure to construct or enlarge such bridge within the time specified in such order shall be taken as a refusal to do said work by said corporation, and thereupon the said board of supervisors shall proceed to let the work of constructing or enlarging the same at the expense of the corporation for the cost thereof, which costs shall be collected by said board of supervisors from said corporation by suit therefor, if necessary. But before said board of supervisors shall let such work, it shall give some agent or officer of said corporation, now authorized by the laws of the State of Missouri to accept service of summons for said corporation, at least twenty days' actual notice of the time and place of letting such work.''

It will be noted that the Legislature used in this proviso the term ''over a public highway,'' in designating the classes of bridges of the need of building which notice must be given by the district to the corporation. While railroads are in our Constitution mentioned as ''public highways,'' and are therein declared to be such, nevertheless this term is not applied ordinarily by the statute to the track, or right of way of a common carrier. On the other hand, the term ''public highway'' is the usual and ordinary term used in this State and in our statutes to designate a dirt, macadamized, gravelled, or improved public road on which pedestrians walk and over which ordinary wheeled vehicles are drawn and which is free to be used by all of the public without fee, and it has become by such universal use almost a technical term for such latter sort of roads. This term as used in the Constitution with reference to railroads, conveys the thought that railroads as a whole and not their tracks and rights of way merely shall be so far ''public highways'' as that the right of eminent domain may be exercised by them, and that the public shall not be denied the right

to use them as common carriers for hire. Not only is all this true, but this proviso, by the use therein of the expression "over a . . . right of way of any corporation," seems *to have thus specifically designated* bridges in railroads and toll roads, thus confirming the view that the word "public highways," as used in such proviso, can by no possibility have reference to anything except the ordinary public roads in a county.

Moreover, other parts of section 5513 provide that the drainage district shall have power "to construct roadways over levees and embankments." It is to be noted that while this section (5513) gives drainage districts power to "construct or enlarge" bridges over public highways, this power is yet modified by the proviso that such district may construct bridges "or *cause* them to be constructed," so that when construed with the language used in the subsequent proviso, it is seen to be in no wise inconsistent with the latter, but on the contrary explanatory thereof. For, by the language of the proviso, the districts are empowered to *cause bridges to be constructed,* and on a contingency only, therein set out, to construct bridges at the expense of other corporations to which it has given a required notice. Since it would have been a simple matter to have expressly provided (if such was the legislative intent) for the construction of bridges by the district, in the same clause wherein the duty of constructing roadways over levees and embankments is specifically laid upon them, and since the whole scheme of bridge-building is by divers statutes and the whole scheme of our law relegated to the several counties, and since if these several statutes are to be held to be repealed, such repeal is here had by the most shadowy and doubtful implication, we are again forced to conclude that if the intent of the Legislature had been to change the entire scheme of bridge-building in this State whenever a drainage district is involved, it would have so written the law in plain and unmistakable language, instead of in terms the vaguest and most indefinite. Besides it is a very persuasive fact

that there is not given anywhere in article 1 of chapter 41, or in the amendments thereto of 1911 (Laws 1911, p. 205 et seq.), any power to a drainage district to levy taxes for the construction or maintenance of bridges, or to expend the revenues of a drainage district for any such purpose. [Cf. Sec. 5519, R. S. 1909; Laws 1911, sec. 5519, p. 213.] Nor is there any provision for estimating the cost to the district of any such bridge (Sec. 5516, R. S. 1909), although in the section last, supra, the cost of improvements is specifically required to be estimated by the commissioners as a basis, among other things, for the levying of the tax, and in order that the circuit court may be able to ascertain whether the whole cost of the work will exceed the benefits therefrom. [Carder v. Fabius River Drainage Dist., 262 Mo. 1. c. 556.] For these additional reasons there seems, when measured by our statutes, to be no difference between the rules governing whether the bridges and approaches made necessary by the construction of a drainage water-way are over a natural water-course, or span a cut in a public highway where before there was no bridge and where but for the artificial water-way none would have been necessary.

While it is regrettable that a studied effort seems to have been made to render this drainage statute vague and ambiguous upon the point of where the burden of bridge-building lies, and while the view we have heretofore taken and are now again forced to take, is fraught with hardships in this and in other single instances, we can only repeat that the remedy lies with the Legislature and not with us. We construe the law; we do not make it. Upon a careful re-examination of the question we are unable to find any tenable or satisfying reason to change the views held by us in the case of State ex rel. v. Chariton Drainage District, supra.

It results that the judgment of the court *nisi* should be affirmed. Let this be done. All concur except *Revelle, J.,* who dissents.