NORBORNE LAND DRAINAGE DISTRICT COMPANY OF CARROLL COUNTY v. EGYPT TOWNSHIP OF CARROLL COUNTY, Appellant.—31 S. W. (2d) 201.

NORBORNE LAND DRAINAGE DISTRICT COMPANY OF CARROLL COUNTY v. CHERRY VALLEY TOWNSHIP OF CARROLL COUNTY, Appellant.

Court en Banc, September 3, 1930.

*W. A. Kitchen* for appellants; *Henry Depping* of counsel.

*S. J. & G. C. Jones* and *Franken & Timmons* for respondents.

ATWOOD, J.—Egypt and Cherry Valley Townships in Carroll County, Missouri, political subdivisions of the State of Missouri, have appealed from general judgments rendered against them by the Circuit Court of Saline County on tax bills for delinquent drainage taxes for the years 1922 to 1926, both inclusive, assessed by the Board of Supervisors of the Norborne Land Drainage District Company of Carroll County, Missouri, a public corporation, against the public highways in said drainage district located in said townships, and for penalties and attorneys' fees. A separate suit was filed against each of said townships and the venue changed to Saline County where the suits were consolidated and tried together and are so treated here. We have jurisdiction because defendants are political subdivisions of the State within the meaning of Section 12, Article VI, of our State Constitution. [Drainage District v. Trail Creek Township, 317 Mo. 933, 941, 297 S. W. 1.].

The petitions were in the usual form employed in suits on tax bills except that general judgments against the townships were sought. The answers contained general denials and matters of special defense, some of which are among the grounds urged in these appeals.

Upon the trial it was "agreed that Carroll County is, and was at all times covered by these tax suits, under township organization," and that defendant townships were legally organized congressional

townships in said county. Plaintiff introduced the tax bills and the drainage tax books for the years 1922-1926, both inclusive, and having made a prima-facie case under the express provisions of Section 4400, Revised Statutes 1919, rested. Thereupon defendants offered demurrers to the evidence, which were overruled. However; defendants did not stand on their demurrers, but introduced in evidence the articles of association and decree of the Circuit Court of Carroll County of May 12, 1899, incorporating plaintiff drainage district; the articles of association for the re-organization of said district under the provisions of the Circuit Court Drainage Act of 1913 (Laws 1913, p. 232), and the notice of such re-organization; the report of the commissioners assessing benefits to the lands in the district and the public highways therein, and particularly that part assessing benefits to the highways in defendant townships, and the notice of the filing of the commissioners' report affecting lands in Carroll County; and the decree modifying and confirming the report of the commissioners.

After introducing the above mentioned articles, notices, report and decrees, defendants offered the exceptions filed by Carroll County, Missouri, to the report of the commissioners assessing benefits against the highways in the district, which evidence, on objection, was ruled inadmissible. Defendant then offered, over the objection of plaintiff, the petition filed in the Circuit Court of Carroll County against Carroll County for the collection of the same taxes herein sued for, less the penalty since then accumulated. The tax bill in said suit was also offered. The Recorder of Deeds of Carroll County identified the drainage tax record of the district, being the record levying the total tax under the provisions of Section 4394, Revised Statutes 1919, against the lands, public highways and other property, from which it appears that, opposite the detailed description of the highways in the district and in the column headed "owner of property assessed" are the words "Carroll County, Missouri." The Treasurer and *ex-officio* Collector of Carroll County testified that the delinquent taxes for the years 1922 to 1926, both inclusive, were certified to him by the secretary of the board of supervisors of the district, and he produced the certificate showing that the name Carroll County, Missouri, appeared in the column headed "owner of property assessed," and that same had been stricken through and the names of the several townships in the district substituted, but witness did not know who made the change; that witness did not make demand upon either of the defendant townships for the taxes against the public roads herein sued for until the latter part of 1927, and that said demand was oral; that witness prepared and signed the tax bills sued on at request of the attorneys for the district, and that the taxes in suit were the same, except as

to the penalty sued for, as in suit against Carroll County which was dismissed in October, 1927. One of the trustees in Egypt Township was offered for the purpose of showing that certain highways in the townships had not been maintained by the townships, but had been marked as state highways. The offer was refused. Defendants then asked leave to produce the highway records of the State Highway Department to show that the State had designated highways in defendant townships in plaintiff drainage district as state highways, which evidence was never introduced. Defendants then renewed their objection to the introduction of the tax bills sued upon, and rested, with the request that the cases be continued to the next term of court in order that they might ask certain declarations of law. At the next term plaintiff, over the objections of defendants, introduced evidence as to the reasonableness of attorneys' fees asked for in said suits. Thereupon defendants asked, and the court refused, certain declarations of law, but made a special finding of facts as requested by defendants, finding the issues for plaintiff, to which finding of facts defendants excepted. Judgment was thereupon rendered for plaintiff in the case against Cherry Valley Township in the total sum of $1290.87, of which amount the sum of $168.37 was allowed as attorneys' fees, together with a penalty of two per cent per month on $679.84 thereof from the 1st of October, 1928, and six per cent interest per annum on the remaining amount. In the suit against Egypt Township, judgment was rendered in the total sum of $2715.06, of which amount the sum of $226.35 was allowed as attorneys' fees, with a penalty of two per cent per month on $1509.03 from October 1, 1928, and interest at the rate of six per cent per annum on the remaining amount of the judgment.

Counsel for appellants first insist that respondent was without power to levy any taxes against the highways in defendant townships, because (a) the townships were not made parties to the proceedings creating the district or named in the articles of association as the owners of any land or other property in said district as required by Section 4378, Revised Statutes 1919; (b) the highways were not described in the articles creating the district as required by Section 4378, Revised Statutes 1919; (c) the townships were not given notice of the proceedings creating the drainage district as required by Section 4379, Revised Statutes 1919; and (d) the townships have never been accorded a hearing on the question of benefits to the highways, and hence, appellants say, they have never had their day in court.

The evidence shows that respondent drainage district was originally incorporated by decree of the Circuit Court of Carroll County,

Missouri, on May 12, 1899, under the provisions of Sections 6517 to 6529, both inclusive, Revised Statutes 1889. This law contained no provision for the assessment of benefits against public highways, nor did it contain any definition of the word "owner" which frequently appears therein. Consequently, neither the public highways existing within respondent's boundaries at the time of its incorporation nor the owners thereof were described, as such, either in the articles of association or in the final decree of incorporation. In this situation it was obviously unnecessary to so describe the highways and owners or to make defendant townships parties to those proceedings. In fact, it does not appear from the record before us that Carroll County was then under township organization. Subsequently, on January 12, 1917, this drainage district was reorganized under the Circuit Court Act of 1913, Laws of 1913, pages 232 to 267, now Article 1, Chapter 28, Revised Statutes 1919. Section 53 of this act, now Section 4429, Revised Statutes 1919, provided that the articles of association in such re-organization should "state that the boundaries of the district will be the same as the boundaries of the present organization and that the description of the land and other property and the owners thereof are such as are described in the present record of the district as now organized" etc. The notice for the hearing of the petition for reorganization ran, "To all of the owners of land and other property in" the named district, in substantial compliance with Section 54 of the Act of 1913, now Section 4430, Revised Statutes 1919, governing the same. Section 4379 mentioned in appellants' objection (c) does not apply to reorganization proceedings. Section 39 of the Act of 1913, now Section 4415, Revised Statutes 1919, defined the word "owner" thus:

"The word 'owner' as used in this act shall mean the owner of the freehold estate, as appears by the deed record, and it shall not include reversioners, remaindermen, trustees or mortgagees, who shall not be counted and need not be notified by publication, or served by process, but shall be represented by the present owners of the freehold estate in any proceeding under this act."

There is no evidence in the record before us that either of defendant townships had a freehold estate in any of the public highways in this drainage district. Hence, they were not owners within the meaning of the act, and we have not held to the contrary in Drainage District v. Bates County, 269 Mo. 78, 189 S. W. 1176; or in Drainage District v. Trail Creek Township, 317 Mo. 933, 297 S. W. 1. Section 55 of the Act of 1913, now Section 4431, Revised Statutes 1919, reads thus:

"After said notice has been so given the matter shall be proceeded with in the same manner as is provided for where articles of association for the formation of a drainage district have been filed."

It follows, therefore, that neither in these articles of association nor in the final decree of reorganization, which could be no broader, was it necessary or proper that any public highways or owners thereof be described, as such, although from paragraph 4 of stipulation filed and records admitted in evidence it appears that in the articles of association, in the notice for the hearing of the petition, and in the decree, both in the proceedings of 1917 and those of 1899, the various tracts of land included in the district were described opposite the names of the owners thereof without excluding therefrom any of the land over which public highways ran, so that in fact all lands embraced within the district and proposed to be affected thereby, including land upon which then existing public highways were located, were described and ownership of the freehold estate of the respective tracts ascribed to named owners there so appearing by the deed records. This was a sufficient designation of ownership under above Section 39. Appellants' above objections (a), (b) and (c) are overruled.

So much for the first three grounds urged in support of appellants' contention that the respondent was without authority to levy any taxes against the highways in question, leveled as they are solely against the original proceedings incorporating the district in 1899 and the reorganization proceedings that culminated in the decree of January 12, 1917. But respondent does not claim that these proceedings alone would have authorized the issuance of the tax bills. It appears from the record of the decree of the Circuit Court of Carroll County rendered December 23, 1919, modifying and approving the commissioners' report filed in the office of the clerk of said court on December 26, 1918, which defendants introduced in evidence, that on December 5, 1917, and before any commissioners were appointed to assess damages and benefits on property in the district under said re-organization decree, the board of supervisors of said district filed a petition in said circuit court for an extension of its boundaries which resulted in a decree rendered August 12, 1918, extending said boundaries, and on the same day a board of commissioners was appointed to assess damages and benefits to property in the district as extended whose report was modified and approved in said decree of December 23, 1919. Thus, in the last analysis, the validity of these tax bills in the respects above questioned depends upon the validity of the proceedings had after the reorganization decree of January 12, 1917. We say this because prior thereto no effort had been made to tax highways, and because Section 40 of the Act of 1913, as it stood until 1919 and which with some changes is now Section 4416, Revised Statutes 1919, among other things relative to the extension of boundary lines of a drainage district, provided as follows (italics ours):

"*If such petition* asks the court permission to change 'the plan for reclamation,' or *that the boundary lines of such district be in any manner changed, it shall also ask the court to appoint three commissioners as provided for under the provisions of section 12 to* appraise the land that shall be taken for rights of way, holding basins, or other works, or *assess the benefits and damages to any or all* lands, *public highways,* railroad and other property *already in the district or that may be annexed to the district by the* proposed amendments, and changes to 'the plan for reclamation' or the *proposed change in the boundary lines of said district.*"

Section 40 also indicated the exact procedure to be followed in extending the boundaries of a drainage district. Defendants did not offer in evidence any record of these proceedings, and as the defenses presented in the instant suits are in the nature of collateral attacks (State ex rel. McBride v. Sheetz, 279 Mo. 429, 437, 214 S. W. 376; State ex rel. v. Blair, 245 Mo. 680, 687, 151 S. W. 148), we must assume that all jurisdictional requirements of the act were complied with. Defendants did introduce in evidence the report of commissioners assessing benefits and damages, filed December 26, 1918. According to stipulation filed herein it contained a detailed description of all the highways in defendant townships and located in the district together, with the benefits assessed against them, Carroll County, Missouri, being designated as the owner thereof. Defendants also introduced in evidence record of notice of the filing of this report. In conformity with Section 15 of the Act of 1913, now Section 4391, Revised Statutes 1919, this notice was addressed "to all persons interested" in the lands described in said notice, and said lands were so described as to include the rights of way of all public highways thereover. This section expressly states that it "shall not be necessary for said clerk to name the parties interested." As already stated, defendants also introduced in evidence the decree of December 23, 1919, modifying and approving said commissioners' report, and according to stipulation filed, said public highways were therein described, as such, assessed with benefits, and Carroll County named as the owner thereof. It thus appears that wherever it can be said that the law required public highways to be described as such, assessed with benefits, and their ownership designated, in the proceedings to extend the boundaries of the district and assess damages and benefits against lands and other property included therein, these things were obviously done or must be presumed to have been done, and appellants' above objections even if lodged against these proceedings would also be unavailing.

We think appellants' objection (d) is also without merit. It is pressed as though a constitutional question were involved, but

if one was raised it has not been properly preserved and, hence, cannot be considered here. However, we may say that counsel's contention that defendant townships "have in no manner been summoned into court, have been accorded no hearing on the question of benefits to the highways and have never had their day in court," apparently rests on a misconstruction of our decision in the Trail Creek Township case, supra, because in discussing objection (a) they say we there ruled "that in counties where township organization exists the public roads, for purposes of taxation under the Circuit Court Drainage Act, are the property of the townships; that in counties with no township organization the roads are the property of the counties." The question of ownership of highways was neither raised nor ruled in the Trail Creek Township case. The township was there held liable for the drainage taxes levied against highways within its bounds, not on the theory that it owned the highways (under the pleadings it did not), but solely on the ground quoted from the opinion in Drainage District v. Andrew County, 278 S. W. (Mo. Sup.) 387, that "benefits should be paid for by the party whose duty it is to keep up the public improvement." In the instant suits there was no evidence that defendant townships held any highway rights, titles or easements. Section 10627, Revised Statutes 1919, relative to establishment of public highways provides that relinquishments of rights of way shall be made to the county and filed in the office of the County Clerk and in the office of the Recorder of Deeds, and the presumption here would be that owners of the fee adjoining the highways owned to the center thereof subject only to highway rights acquired and held by the county in trust for the public. The record shows, as above stated, that Carroll County was named as owner of the highways in the report of the commissioners assessing damages and benefits and in the final decree modifying and approving the same, and Carroll County appeared in response to the notice of the filing of said report, filed objections, was heard thereon and in said final decree allowed a reduction in the benefits assessed. Appellants are, therefore, in no position to maintain their objection (d). Indeed, this contention is clearly bottomed on a misconception of the legal relation existing between political subdivisions of the State and public highways situated therein. On this point we said in State ex rel. v. Drainage District, 269 Mo. 444, 457, 190 S.W. 897:

"In opening, vacating, improving, repairing and dealing with the public highways, the several counties and the county courts thereof are but agencies, or agents of the State; acting from the very necessities of the cause by delegated authority."

In Drainage District No. 1 v. Bates County, 216 S. W. (Mo. Sup.) 949, 953, on the question of notice in connection with the assessment of benefits to public roads, we said:

"This being a tax against the public or the State, although payable by the county, no special notice of the proceedings to the State or county was necessary. The only notice necessary is to the private persons, and not to the public, which really institutes the proceedings in such cases. The State can tax itself or the county, without any proceedings whatever, by a mere mandate of the statute. The Legislature could have provided that the State or county should pay one-half, or any part, or all of the cost of a public improvement, without more, and no provision of the state or federal Constitution would have been violated. It was not a constitutional necessity that either the State or county be a party (in the usual sense) to, or have special notice of, the proceedings to establish the cost, or do the work, or make assessments, therefor. That was a matter wholly within the province of the Legislature. Both the State and county and the public had all the notice in this case required by the statute, and that was sufficient."

Appellants' above objection (d) is overruled.

Appellants next assert that, "The assessments in these cases, having been made in the name of Carroll County, are void because made in the name of one not the owner of the property assessed." This claim also grows out of the misconceptions above noted. Defendant townships, as already indicated, were in no sense owners of the public highways. On the other hand, Carroll County was entrusted with the public's right, title and interest therein for highway purposes and evidently in that sense it was designated as the owner. However, appellants do not refer us to any provision of this Drainage Act, now Article 1 of Chapter 28, Revised Statutes 1919, requiring that these taxes be *assessed to and levied against the owners* of the land and we find no such provision. On the contrary, Section 4394, Revised Statutes 1919, reads, (italics ours): "The said tax shall be *apportioned to and levied on each tract of land or other property in said district* in proportion to the benefits assessed and not in excess thereof," etc. Appellants rely upon our ruling in Abbott v. Lindenbower, 42 Mo. 162, 167, decided in 1868 and construing the Revenue Act (Laws 1863-4, p. 61), that "an assessment in the name of a person who neither was nor ever had been the owner of the property would be an utterly void assessment." Section 10 (p. 68) of the act specifically required the land "to be assessed to the person appearing to be the owner at the time of the assessment." A new revenue act was passed in 1872, Section 203 thereof (Laws 1872, p. 124), providing among other things that, "each tract of land or lot shall be chargeable with its own taxes, no matter who is the owner, nor in whose name it is or was assessed," and this provision has been carried forward and now appears in

Section 12803, Revised Statutes 1919. It seems clear that this contention of appellants also is without merit.

Appellants insist that respondent is estopped to claim of them the taxes, penalties and attorneys' fees herein sued for. They urge as ground of estoppel that respondent assessed said taxes to ▮▮▮▮ Carroll County and upon the refusal of said county to pay them the district filed suit therefor against said county, and by reason of this action defendant townships were induced to change their position to their detriment. The fact that the district may have sued the wrong person did not, of course, prevent it from dismissing the suit and suing the right person, and defendant townships were not led to any injurious action on their part by the fact that they were not sued. Nor does it appear that any act of plaintiff has induced defendants to alter their position to their disadvantage. The defenses vigorously interposed in the present suits are inconsistent with the idea of any voluntary payment of these taxes by defendants. This contention is likewise ruled against appellants.

Appellants also say that the present suits were barred by Section 4400, Revised Statutes 1919, because not brought within six months after the taxes were delinquent. The pertinent clause of this statute is as follows:

"The liens established and declared in the preceding sections may and shall be enforced by an action on delinquent tax bills, made and certified by the county collector, which action shall be instituted in the circuit court without regard to the amount of the claim within six months after December 31st of the year for which said taxes were levied."

In Drainage District v. Bates County, 269 Mo. 78, a similar statute (Section 5599, R. S. 1909, now 4496, R. S. 1919, with some changes), was construed. The particular language there under consideration follows:

"The said tax shall become delinquent if not paid on or before the thirty-first day of December of each year and when so delinquent, shall bear interest at the rate of one per cent per month until paid and the collector shall bring suit for all delinquent assessments or installments thereof and interest thereon within six months after an assessment or installment thereof becomes delinquent."

Construing the above language we there (p. 91) said:

"It is urged because this portion of Section 5599, above quoted, says the collector shall bring suit within six months, that therefore the action is barred after that time. The words should not be so construed. The statute does not say the action shall be barred. Had the law-makers intended so harsh a thing, they would have been

more pointed in their language. It is evident that there was no intent to bar the action at the end of six months. It is more in the way of a direction to the collector, than it is a statute of limitation.''

The above construction was followed in State ex rel. McBride v. Sheetz, 279 Mo. 429, 439, 214 S. W. 376; State ex rel. v. Keithley et al., 204 S. W. (Mo. Sup.) 24; Drainage District No. 1 v. Bates County, 216 S. W. (Mo. Sup.) 949, 952 (second appeal); St. Francis Levee Dist. v. Arcadia Timber Co., 215 Mo. App. 368, 371; and State ex rel. v. Coleman et al., 274 S. W. (Springfield Ct. of Appeals) 1108, 1109. While this opinion in Drainage District v. Bates County, 269 Mo. 78, 189 S. W. 1176, did not receive the full concurrence of a majority of the members of the court, yet the subsequent opinions in State ex rel. v. Keithley et al., and Drainage District No. 1 v. Bates County, were adopted as the opinions of the court, all of the judges concurring. The Springfield Court of Appeals has twice followed these decisions on this point. In St. Francis Levee District v. Arcadia Timber Company, supra, the section considered was Section 4621, Revised Statutes 1919, the pertinent provision of which, identical with that now presented for our consideration, is as follows:

''The liens established and declared in the preceding sections may and shall be enforced by an action on delinquent tax bills, made and certified by the county collector, which action shall be instituted in the circuit court without regard to the amount of the claim within six months after December 31st of the year for which said taxes were levied.''

We agree with the conclusion there expressed (p. 371) that the above section and Section 5599, Revised Statutes 1909, deal with practically the same subject-matter and there is no apparent reason that would require a different meaning. It does not appear from the reasons advanced by appellants that the construction heretofore given and relied upon for so many years should now be abandoned.

Appellants also contend that the trial court erred in rendering judgment for penalties, citing 37 Cyc. 1544, where it is said:

''The courts will not enforce a penalty against the taxpayer where he makes a good defense against its imposition or shows a legally sufficient excuse for the delinquency charge. It is held a sufficient ground for refusing to enforce the penalty that the officers did not give the taxpayer the notice or demand to which he was entitled; that the tax was illegal or illegally levied.''

Appellants have not shown that the tax was illegal or illegally levied, and in St. Francis Levee District v. Dorroh, 316 Mo. 398, 289 S. W. 1. c. 921, we held that the statutory notice to taxpayers of the time and place the collector would meet them to receive

taxes was only directory. It is said that the names of the townships never appeared in the tax bills until November 29, 1927, shortly prior to which date our opinion in the Harrison County case, supra, was handed down, that defendant townships were guilty of no wrongdoing whatsoever, and that we should refuse to enforce the penalties. Section 4397, Revised Statutes 1919, relative to delinquent drainage taxes, is as follows:

"All taxes provided for in this article remaining unpaid after December 31st of the year for which said taxes were levied shall become delinquent and bear a penalty of two per cent per month on the amount of said taxes from date of delinquency until paid. In computing said penalty each fractional part of a month shall be counted as a full month."

In 26 Ruling Case Law, page 385, it is said that "it is generally held that one who in good faith contests his liability to the tax and delays payment beyond the allotted time during the pendency of the litigation is liable for the penalty if the decision is adverse." An erroneous assessment is not a good excuse for non-payment of the proper amount. [37 Cyc. p. 1545, n. 77.] Waiver of a penalty may not be implied from a failure seasonably to demand it. [Ferguson v. Pittsburgh, 159 Pa. St. 435, 28 Atl. 118.] If the legislative idea is a penalty for failure to pay a tax it can "no more be forgiven for mistake, whether excusable or not, than that to which it is incidental." [State v. Ry. Co., 128 Wis. 449, 498.] In 3 Cooley on Taxation (4 Ed.) page 2536, it is said that penalties consist in an addition to the tax. In Jorgensen-Bennett Mfg. Co. v. Knight, 156 Tenn. 579, 588 (writ of error denied by the Supreme Court of the United States, 49 Sup. Ct. Rep. 186), it is said that "a belief of non-liability, based on a mistake of law, does not acquit." Appellants' contention is overruled.

Appellants also complain of the action of the court in hearing evidence as to the reasonable value of attorneys' fees at its September Term when the case was heard and argued at the preceding May Term. This is a matter within the sound discretion of the court and appellants have not shown that this discretion was abused. Appellants themselves had asked that the case be continued to the September Term in order that they might prepare and offer declarations of law. When the evidence on attorneys' fees was heard, appellants did not ask the court for further time to secure evidence on this point, nor do they now claim that the fees allowed are excessive.

Appellants next say that their demurrers to the evidence offered at the close of all the evidence should have been sustained because:

(a) A valid and legal assessment against defendants was not shown.

(b) If plaintiff made a prima-facie case it was overturned when defendants showed that the tax bills were not based on a valid assessment.

(c) There was no proof of demand provided in Section 4396, Revised Statutes 1919.

Point (a) rests upon the objection, previously made and hereinabove discussed, that in the assessment of damages and benefits Carroll County was referred to as the owner of the highways in question. We repeat, if any person can be said to own the public highways, aside from abutting feeholders, it would be Carroll County to which all right of way relinquishments are presumed to have been made. On this theory the jurisdictional requirements of the drainage act were fully met. Furthermore, as we have already suggested, counties and townships are but agencies of the State, and this being a tax against public or state improvements, no special notice to such agencies was necessary because these proceedings were really instituted by the State. [State ex rel. v. Drainage District, 269 Mo. 444, 457, 190 S. W. 897; Drainage District No. 1 v. Bates County, 216 S. W. (Mo. Sup.) 949, 953.] Hence, above points (a) and (b) are overruled. Point (c), as already observed, is ruled against appellants on authority of St. Francis Levee District v. Dorroh, supra.

Appellants also say: ''The petition is fatally defective and the evidence is insufficient because there is no allegation or proof that the townships had knowledge of the assessments against the highways.'' In the light of the provisions of Sections 4390, 4394 and 4416, and the commissioners' report, notice of the filing thereof, and the decree modifying and approving the same; referred to in the petitions and heretofore fully discussed, this contention is ruled against appellants.

Appellants complain that they were not permitted to prove that part of highways in the district were maintained by the State Highway Commission. The record shows that they asked and were given leave to produce records of the State Highway Department on this point, but such records were never produced or offered in evidence. They were necessary to show that the roads had been taken over by the State. [State ex rel. v. State Highway Commission, 315 Mo. 747, 755-757, 287 S. W. 39.] This objection is overruled.

Finding no reversible error in the record presented for our review the judgment of the trial court is affirmed. All concur.