HARRISON & MERCER COUNTY DRAINAGE DISTRICT, Appellant, v. TRAIL CREEK TOWNSHIP.—297 S. W. 1.

Division One, July 30, 1927.

**1. APPELLATE JURISDICTION: Drainage Tax Assessed to Municipal Township.** An organized municipal township is a political subdivision of the State, and therefore the Supreme Court has jurisdiction of an appeal from a judgment in a suit by a drainage district to collect a drainage tax assessed against such a township, although the drainage district is not a political subdivision of the State within the meaning of the provision of the Constitution (Sec. 12, Art. 6) defining the appellate jurisdiction of the Supreme Court.

**2. ———: Municipal Township: Political Subdivision.** The Constitution (Sec. 9, Art. 6) authorized the General Assembly, by a general law, to provide for township organization, and the general statute (Chap. 121, R. S. 1919), enacted in pursuance thereto, plainly contemplates the organization

of the township as a separate and distinct unit of government, or as a political or governmental subdivision of the State, and another section of the same article of the Constitution (Sec. 12, Art. 6) declares that the Supreme Court shall have exclusive jurisdiction on appeal "in cases where a county or other political subdivision of the State is a party," and a township organized under said general statute is therefore such "other political subdivision." [Distinguishing Wilson v. King's Lake Drainage & Levee District, 237 Mo. 39, 48.]

3. DRAINAGE TAX: Assessed against Public Roads: Liability of Township. A drainage district organized under the Circuit Court Drainage District Act of 1913 (Secs. 4378-4438, R. S. 1919) has authority, under said statute, to levy a benefit assessment against the public roads and highways located within the corporate boundaries of the district and within an organized municipal township, and can maintain an action against the township for the collection of such benefit assessment, and procure a general judgment against the township for the amount thereof.

4. ———: ———: ———: Positive Right: Inadequate Statutory Remedy: Supplied by Common Law. The statute relating to the organization of a drainage district in the circuit court provides (Sec. 4390, R. S. 1919) that benefits shall be assessed against public highways and roadways, according to the increased physical efficiency and decreased maintenance cost of the roadway by reason of the protection to be derived from the drainage works and improvements, and gives to the drainage district a lien on the road or highway for the amount of the benefit assessed, and thereby creates a positive right in favor of the district, and the Legislature had authority to say that public highways may be benefited by drainage works; but a lien of a benefit assessment upon or against a public road is unenforcible by foreclosure or sale, and the Legislature has not in the statute provided an adequate and appropriate remedy for the enforcement of the positive right created by the statute, and therefore the drainage district may resort to any remedy existing at common law that will afford it adequate and proper redress, and the usual and ordinary remedy is an action, and a general judgment therein, against the political subdivision of the State chargeable with the maintenance, repair and upkeep of the public roads and highways benefited, whatever its corporate name or identity may be; and if that subdivision is an organized municipal township the suit for the amount of the assessment should be brought and a general judgment rendered against it. [Distinguishing Drainage District v. Bates County, 269 Mo. 78, which was a proceeding under the County Court Drainage District Law.]

5. ———: ———: Whether Chargeable to County or Township. Benefits assessed against public roads or highways by a drainage district organized under the Circuit Court Drainage District Act should be paid by the political subdivision chargeable by law with the maintenance, repair and upkeep of the roads. If there is township organization in the county, it is the duty of the organized township charged with the duty to maintain the roads against which the benefit is assessed, to pay the assessment, and not the duty of the county. If the district is organized under the County Court Drainage Act, it is the duty of the county to pay the assessment, for that act expressly requires that the assessment "be apportioned to the county."

6. TOWNSHIP ORGANIZATION: Demurrer to Petition: Admission. A demurrer by the defendant township to the petition alleging that the Township Organization Law is in force in the county is in effect an admission that the county has adopted township organization.

7. TOWNSHIP: Duty to Repair Roads: Drainage Tax. Under the provisions of the Constitution and statutes relating to township organization, it is the duty of the respective organized townships, and not the duty of

the county, as the unit of government, in counties under township organization, to keep up, maintain, drag and repair the public roads and highways within the corporate boundaries of the respective organized townships, and a benefit assessed against a public road in such township, by a drainage district organized under the Circuit Court Drainage Act, should be paid out of the township treasury and township funds.

Corpus Juris-Cyc. References: **Constitutional Law,** 12 C. J., Section 55, p. 708, n. 38. **Courts,** 15 C. J., Section 511, p. 1080, n. 55. **Drains,** 19 C. J., Section 212, p. 717, n. 64; Section 214, p. 718, n. 73; Section 275, p. 753, n. 61. **Pleading,** 31 Cyc., p. 333, n. 76.

Appeal from Harrison Circuit Court.—*Hon. L. B. Woods,* Judge.

REVERSED AND REMANDED.

*Randall Wilson* for appellant.

(1)　Sec. 4390, R. S. 1919, gave the appellant the right to assess benefits against public roads, and such assessments against public property are proper. City ex rel. v. Henry County, 115 Mo. 557; St. Louis v. Brown, 155 Mo. 560; Mullins v. Cemetery Assn., 239 Mo. 689; Drainage District v. Bates County, 269 Mo. 78; Platte River Drain. Dist. v. Andrew County, 278 S. W. 387; Grimes v. Coe, 102 Ind. 406; Young v. Wells, 97 Ind. 410. (2)　Sec. 4399, R. S. 1919, provides the remedy by which drainage districts may enforce the collection of benefit assessments against lands and other property, but it does not provide any remedy whereby a drainage district can enforce the collection of benefit assessment against public roads or railroad right-of-way or railroad ways, nor does any other section of the Circuit Court Drainage Law give a remedy for the collection of such benefit assessment. Art. 1, Chap. 28, R. S. 1919. (3)　Where a right is created by statute, but no statutory remedy is provided, then resort may be had to any appropriate remedy known at common law. Drainage District v. Bates County, 269 Mo. 78, 85; Householder v. Kansas City, 83 Mo. 488; Cummings v. Wynn, 89 Mo. 51. (4) If the Legislature allows special benefit assessments against public property, the municipality can be made to respond therefor by a general judgment. City ex rel. v. Henry County, 115 Mo. 557; Drainage District v. Bates County, 269 Mo. 84; Platte River Drain. Dist. v. Andrew County, 278 S. W. 387. (5)　The defendant is the legal custodian of the public highways, township public roads, within its boundaries. Art. 12, Chap. 98, R. S. 1919. It is the duty of the township to keep up the township roads. Benefits should be paid for by the party whose duty it is to keep up the public improvements. Platte River Drain. Dist. v. Andrew County, 278 S. W. 387. (6)

Townships are authorized to assess and collect taxes for township purposes, included in which purpose is the maintenance of township roads. Secs. 13216, 13221, 13232, 13234, 13250, R. S. 1919. In addition, the Constitution authorizes a special levy by townships for road and bridge purposes. Sec. 22, Art. 10, Mo. Constitution. (7) There is no expressed or implied provision, that taxes, benefits or assessments for drainage purposes against the public highways of a township must be and are authorized to be assessed against the various counties. The taxes should be assessed against the parties whose duty it is to maintain the same. It is the duty of the township to keep up the township roads. Sec. 4390, R. S. 1919; Platte River Drain. Dist. v. Andrew County, 278 S. W. 387. (8) It is lawful for the township to meet and defray these taxes from township funds. Sec. 13216, R. S. 1919.

*A. G. Knight* and *Garland Wilson* for respondent.

(1) Where the tax assessed is to be collected by the enforcement of a lien against the property and such a remedy is inapplicable on account of the nature of the property, there is no right given against the property itself. City of Clinton to use v. Henry County, 115 Mo. 557; St. Louis v. Brown, 155 Mo. 561; Drainage Dist. v. Bates County, 269 Mo. 78. (2) In order for any right to be given for the collection of a drainage tax from any municipal subdivision of the State by reason of the benefit accruing to public property by a suit to secure a general judgment, there must be a clear provision to that effect. City of Clinton to use v. Henry County, 115 Mo. 557; St. Louis v. Brown, 155 Mo. 561; Drainage Dist. v. Bates County, 269 Mo. 78. (3) There is nothing in the drainage law creating a right against a township on account of benefits assessed against public roads therein. (4) If there is any liability by reason of benefits assessed against public roads by drainage districts, the liability is on the part of the county, not the separate township therein. Drainage District v. Bates County, 269 Mo. 78; Drainage District v. Andrew County, 278 S. W. 387.

SEDDON, C.—This cause comes to this court on appeal upon the pleadings only. The petition alleges:

"Plaintiff states that at all the dates hereinafter mentioned, the Harrison & Mercer County Drainage District was, and now is, a corporation duly organized as provided by the Laws of the State of Missouri for 1913, and now known as Article 1, Chapter 28, of the Revised Statutes of the State of Missouri for 1919; that after its said organization, its board of supervisors levied a tax upon all the land within its district for the benefits accruing thereto, and found

necessary to pay the cost of the completion of its proposed works and improvements as shown in its plan of reclamation, and in carrying out the object of said district organization.

"Plaintiff further states that the defendant, Trail Creek Township, is a municipal township, number sixty-four (64), in Range twenty-six (26), in Harrison County, Missouri.

"That plaintiff's board of supervisors for the year 1920, determined, ordered and levied an annual installment tax, as is shown by the delinquent drainage tax bill hereto attached, against defendant, and its said public highways and roadways, to-wit: The sum of $369.26, which said amount became due and payable on the first day of November, 1920.

"Plaintiff further states that Chapter 119 of the Revised Statutes of the State of Missouri for 1909 was at all the dates mentioned, and now is in force in Harrison and Mercer counties, the place where plaintiff, said drainage district, is organized and located, and said Trail Creek Township aforesaid is liable for the benefits assessed and levied against the public highways and roadways hereinafter described, within said municipal township, in plaintiff's plan of reclamation, according to the increased physical efficiency and decreased maintenance cost of the roadways by reason of the protection said public highways and roadways derive from the proposed work and improvements of plaintiff's district; which said highways and roadways are described as follows, to-wit: [Here follows a definite and specific description of said highways and roadways.]

"That the secretary of the board of supervisors of plaintiff's said district extended its drainage tax under the provisions of said act on a tax book for the township in which defendant's highways and roadways are located, and that said drainage tax book was certified and delivered to the township collector of said township, as is provided by said article aforesaid; that said township collector had authority to collect said tax aforesaid so levied and extended against defendant's said highways and roadways, and that said collector made diligent effort to collect the same, but the defendant failed and refused to pay said tax, or any part thereof, so levied and extended as aforesaid against said highways and roadways aforesaid.

"That said township collector thereafter made due return of the said tax book, and certified the said tax against defendant's said highways and roadways aforesaid as delinquent.

"That thereafter the secretary of plaintiff's board of supervisors certified said delinquent drainage tax to the County Treasurer and *ex-officio* Collector of Harrison County, Missouri, for collection, as is provided for the collection of drainage tax in counties not under the provisions of Chapter 119, Revised Statutes of Missouri for 1919.

"Plaintiff further states that said *ex-officio* Collector and Treasurer of Harrison County, Missouri, has made due and diligent effort to collect said delinquent drainage tax due against defendant's highways and roadways aforesaid, but that the defendant has failed and refused to pay the same, and the same remains due and unpaid and is now delinquent..

"Plaintiff further states that it bases its said cause of action in this case upon the delinquent tax bill hereto attached, marked 'Exhibit A' and made a part hereof, certified by the County Treasurer and *ex-officio* Collector of Harrison County, Missouri, as is provided by Article 1, Chapter 28, of the Revised Statutes of the State of Missouri for 1919.

"Plaintiff further states that by reason of the defendant permitting said drainage tax aforesaid to become delinquent and remain unpaid after the 31st day of December, 1920, the same being the one year in which said tax was levied, the same bears two per cent penalty per month on the the amount of said tax from the 31st day of December, 1920, until paid; that there is now due as penalty of said drainage tax against said real estate of the defendant, the sum of $125.55.

"Wherefore, plaintiff prays the court that it may have judgment against defendant for the sum of $369.26, the amount of said delinquent drainage tax, so levied, assessed and extended as aforesaid against the defendant's said highways and roadways as aforesaid, and for the further sum of $125.55 penalty thereon since the 31st day of December, 1920, and that plaintiff's lien against said highways and roadways for said sums, together with the cost and expense in collecting same, including a reasonable attorney fee, to be fixed by the court, and taxed as costs in this action, as is provided by Article 1, Chapter 28, of the Revised Statutes of the State of Missouri for 1919, aforesaid, may be adjudged, declared and enforced against said defendant aforesaid, and for such other and further orders, as to the court may seem just and proper."

Defendant (respondent here) filed the following demurrer to the petition:

"Comes now the defendant in the above entitled cause and demurs to the petition of the plaintiff herein, and for grounds of demurrer states:

"1st. That the petition of the plaintiff herein fails to state facts sufficient to constitute any cause of action against the defendant.

"2nd. That the petition on its face shows that it is an attempt by the Harrison & Mercer County Drainage District to collect a drainage tax and benefit assessments under the drainage law against the defendant, Trail Creek Township, a municipal township, on account of roads and highways in said township, alleged to be affected

and benefited by such drainage district, when under the law the said defendant is not the owner or legal custodian in any manner of the public highways in said township; that the same under the law, if subject of taxation, must be assessed and taxed against the county and not the various townships of said county.

"3rd. That there is no provision of law whereby townships, such as defendant, are authorized or enabled to collect a drainage tax or any source of revenue provided by law by which such taxes may be met, and there is no contemplation of law, either expressed or implied, by which said townships are to be assessed benefit assessments or taxed for drainage purposes.

"4th. That by the express provisions and by clear implication any taxes, benefits or assessments for drainage purposes against the public highways of the State, must be and are authorized to be assessed against the various counties, and such benefits must be assessed and borne by the various counties of the State, and not by the townships thereof.

"5th. That there is no provision of law for the assessment or collection of benefits or assessments or taxes by the various townships, or enabling such townships to provide in a lawful manner for the meeting and defraying of any such tax assessment or benefit.

"6th. That under the law the plaintiff had no power or authority to levy or assess any tax against the public roads in the defendant township for drainage or other purposes.

"Wherefore, defendant prays judgment of the court that it be discharged and for naught held, and that it recover its costs in this behalf laid out and expended."

The circuit court sustained the demurrer to the petition, and, plaintiff (appellant here) refusing to plead further, the circuit court rendered judgment dismissing the petition and assessing the costs of suit against plaintiff. Plaintiff filed timely motions in arrest of judgment and for rehearing, which motions were overruled by the circuit court, whereupon plaintiff was allowed an appeal to this court. We take jurisdiction of the appeal under Section 12, Article 6, of our State Constitution, because the defendant organized township is a political subdivision of the State.

I. While the question of our jurisdiction herein is not raised by the parties to this action, and although our jurisdiction is apparently conceded by the parties hereto, nevertheless, in retaining jurisdiction of this appeal upon the sole ground that defendant, Trail Creek Township, is a political subdivision of the State, we **Appellate** take occasion to say that we are mindful of the language **Jurisdiction.** used and adopted by this court, en banc, in Wilson v. King's Lake Drainage & Levee District, 237 Mo. l. c. 48, wherein it

is ruled (and rightly so, we think) that a drainage district is not a political subdivision of the State within the meaning of Section 12, Article 6, of the Constitution. In ruling that precise question, however, the writer of the opinion in that case said: "We are of the opinion that the words, 'other political subdivision of the State,' as used in Section 12, Article 6, following as they do, the word 'county,' mean such political subdivisions as may be created having powers similar to those of a county, and do not refer to townships, school districts, levee districts, drainage districts, and such like minor political subdivisions of the State."

But it seems obvious to us that the learned writer of the opinion in that case, in using the above quoted language, did not have in mind political (i. e., *governmental*) townships as organized and created in a number of the counties of the State under the Township Organization Statute. [Chap. 121, R. S. 1919.] The Township Organization Statute aforesaid was enacted by the General Assembly of the State pursuant to the authority granted by Section 8, Article 9, of the Constitution adopted by vote of the people of this State on October 30, 1875 (in which same Constitution is included Section 12, Article 6, aforementioned), as follows: "The General Assembly may provide, by general law, for township organization, under which any county may organize whenever a majority of the legal voters of such county, voting upon that proposition, at any general election, shall so determine; and whenever any county shall adopt township organization, so much of this Constitution as provides for the management of county affairs, and the assessment and collection of the revenue by county officers, in conflict with such general law for township organization, may be dispensed with, and the business of said county, and the local concerns of the several townships therein, may be transacted in such manner as may be prescribed by law. . . ."

The general Township Organization Law aforesaid, enacted by the General Assembly pursuant to the aforesaid constitutional authority, plainly contemplates the organization or creation of the township as a separate and distinct unit of government, or, in other words, as a political (i. e., *governmental*) subdivision of the State. The Township Organization Law provides for a distinct and separate government of the township, as a unit of government, in those counties of the State voting to adopt the township organization plan. It provides for the election of certain township officers and prescribes their governmental duties, powers and authority. It provides for the assessment, levy and collection of the revenue in such organized townships, not only to defray the usual and ordinary township governmental charges and expenses, but also for road and bridge uses and purposes. In other words, the general township organization law, and the constitutional authority under which such general law was enacted, in our judgment

and opinion, contemplates, and provides for, the creation of a separate and distinct unit of government, known as an organized township, having certain governmental powers, and charged with certain governmental obligations and duties, similar to those of a county. Hence, we think that the framers of our Constitution of 1875, when they wrote into Section 12, Article 6, of said Constitution that the Supreme Court shall have exclusive jurisdiction on appeal "in cases where a county or *other* political subdivision of the State is a party," must have had in mind, in the use of the words "or *other* political subdivision of the State," that the General Assembly, pursuant to the authority granted by Section 8, Article 9, of the same Constitution, might or would provide, by general law, for the creation of the organized township, as a unit of government, separate and distinct from the county. The two sections of the same Constitution are *in pari materia*, and must be so construed. It seems plain to us that the framers of the Constitution of 1875 would not have used the word "other" in connection with the word "county," in Section 12, Article 6, of said Constitution, except in contemplation of the creation of *another* unit of government in addition to that of the then existing county unit. We are constrained to the view, and so hold, that an organized township, such as defendant herein, in a county which has adopted township organization, is a political subdivision of the State within the meaning and intent of Section 12, Article 6, of the Constitution. Hence, we retain jurisdiction of this appeal. We proceed to a discussion of the merits of the appeal.

II.   It may be stated at the outset that, while the petition prays the adjudgment and enforcement of a lien against the public roads and highways herein involved, nevertheless it seems to be agreed and conceded by the parties hereto that such a lien cannot be enforced (by reason of public policy and the rulings and decisions of this court) against public property, including public roads and highways. Both parties agree that this appeal presents but a single question of law, namely, Can plaintiff drainage district levy a benefit assessment against the public roads and highways located within the corporate boundaries of defendant organized township and maintain a suit or action for the collection of such benefit assessment, and procure a general judgment therein, against the defendant organized township? The solution of this question must be sought and found in the applicable statutes of this State.

**Judgment Against Township.**

It is alleged in the petition, and admitted by the demurrer, that plaintiff and appellant is a drainage district organized under proceedings in the circuit court under and by virtue of Article 1, Chapter 28, Sections 4378-4438, Revised Statutes 1919. The statute (Sec-

tion 4388) contemplates the appointment, by the circuit court, of three commissioners, who shall appraise the lands, within and without said drainage district, to be acquired for rights-of-way, holding basins and other drainage works of the district, and who shall assess benefits and damages accruing to all lands in the district and other property by reason of the reclamation or drainage plan.

Section 4390, among other things, provides: ". . . Said commissioners shall proceed to view the premises and determine the value of all land and other property, within or without the district, to be acquired and used for rights-of-way, holding basins or other works set out in 'the plan for reclamation;' they shall *assess* the amount of *benefits,* and the amount of damages, if any, *that will accrue to* each governmental lot, forty-acre tract or other subdivision of land according to ownership, *public highways,* railroad and other rights-of-way, railroad roadways and other property, from carrying out and putting into effect 'the plan for reclamation' heretofore adopted. . . . The *public highways,* railroad and other rights-of-way, *roadways,* railroad and other property *shall be assessed* according to the increased physical efficiency and decreased maintenance cost of roadways by reason of the protection to be derived from the proposed works and improvements. . . ."

Section 4394 provides: "After the list of lands, and other property, with the assessed benefits and the decree and judgment of court, have been filed in the office of the county recorder as provided in Section 4392 of this article, then the board of supervisors shall, without any unnecessary delay, *levy a tax of such portion of said benefits on all lands,* railroad and *other property in the district to which benefits have been assessed,* as may be found necessary by the board of supervisors to pay the costs of the completion of the proposed works and improvements as shown in said 'plan for reclamation' and in carrying out the objects of said district, and plus ten per cent of said total amount for emergencies. *The said tax shall be apportioned to and levied on each tract of land or other property* in said district in proportion to the benefits assessed and not in excess thereof. . . ."

Section 4395 provides: "The said board of supervisors shall each year thereafter determine, order and levy the amount of the annual installment of the total taxes levied under the preceding section, which shall become due and be collected during said year at the same time that state and county taxes are due and collected, which said annual installment and levy shall be evidenced and certified by the said board not later than September 1st of each year to the collector of revenue of each county in which lands and other property of said district are situate. . . ."

Section 4399 provides: ''All drainage taxes provided for in this article, together with all penalties for default in payment of the same, all costs in collecting the same, including a reasonable attorney's fee, to be fixed by the court and taxed as costs in the action brought to enforce payment, shall, _from date of filing the certificate hereinafter described in the office of the Recorder of Deeds for the county wherein the lands and properties are situate, until paid, constitute a lien, to which only the lien of the State for general state, county, school and road taxes shall be paramount, upon all the lands and other property against which such taxes shall be levied as is provided in this article_ . . .'' (The above italics are our own.)

Both parties to this action bottom their respective contentions upon the rulings of this division of this court announced in Drainage District v. Bates County, 269 Mo. 78, and Platte River Drainage District v. Andrew County, 278 S. W. 387. Each party claims that our holdings in the two cited cases are determinative of its contention herein and of this appeal. Plaintiff drainage district (appellant), on the one hand, urges that Section 4390, Revised Statutes 1919, supra, empowers plaintiff with the right and authority to assess benefits, and to levy an assessment, or special improvement tax, to pay and discharge such benefits, against the public roads and highways located within the boundaries of defendant township; that Section 4399, Revised Statutes 1919, supra, does not provide an adequate and appropriate remedy by which the drainage district may enforce the collection of the benefit assessments levied against public roads and highways, and, therefore, inasmuch as no adequate statutory remedy is provided for the collection of such benefit assessments, resort may be had by plaintiff to any appropriate remedy known at common law; and that, inasmuch as the legislative branch or department of our State Government has seen fit to authorize and empower drainage districts organized under proceedings in the circuit court to assess public roads and highways with benefits accruing thereto by reason of the drainage or reclamation plan, and inasmuch as public roads and highways, by reason of public policy and the prior rulings of this court, are not subject to, and cannot be sold in satisfaction of, an enforcible lien for the collection of such benefit assessments, therefore the defendant organized township can be made to respond to a general judgment rendered in an action, such as the instant one, brought by the drainage district against the organized township to collect such benefit assessments, and can be required to pay and satisfy such general judgment out of the township funds and treasury; and that such, by analogy, is the substance and effect of our holdings in the two cited cases, supra.

Defendant organized township, on the other hand, urges that, in order to enforce the collection of drainage assessments levied against

public roads and highways by means of an action and a general judgment against an organized township, or other political (i. e., governmental) subdivision of the State, there must be a clear and positive provision for such remedy in the drainage law or other applicable statutes of the State, and that there is no provision in the drainage law or other statutes of the State whereby an organized township may be subjected to an action, and a general judgment therein, for the collection of benefit assessments levied against public roads and highways; and defendant township contends further that, if there is any liability or obligation for the payment of benefit assessments imposed upon, or laid against, the public roads and highways, the liability or obligation is that of the county within which such public roads and highways are situate, and not that of a separate and distinct organized township therein, and that such is the import and effect of our rulings in the two cited cases, supra. The contentions of the respective parties make necessary, therefore, a careful and close analysis of the cited cases.

In Drainage District v. Bates County, 269 Mo. 78, the proceedings leading to the incorporation of the plaintiff drainage district, and the assessment of benefits accruing to the private lands and public roads and highways situate therein, were had in the County Court of Bates County, under and by virtue of what is commonly called the County Court Drainage Law. [Art. 4, chap. 41, R. S. 1909, and amendments thereto.] Section 5591, Revised Statutes 1909, which was then a part of the so-called County Court Drainage Law, provided: "When any ditch established under the provisions of this article (i. e., Art. 4, chap. 41, R. S. 1909) drains, either in whole or in part, or benefits any *public* or corporate *road* or railroad, the viewers shall *apportion to the county, if a county or State or free turnpike road,* or if a corporate road or railroad, to the company owning, operating or controlling the same, *the same proportion of the cost of location and construction of the improvement in proportion to the benefits received as to private individuals.*" (Italics ours.) Construing, therefore, the precise statute involved in the Bates County case, this division of this court therein ruled, in substance and effect, that the so-called County Court Drainage Law therein involved did not provide that public roads and highways shall be *assessed* for benefits accruing thereto by reason of the drainage improvements and reclamation plan, but, on the other hand, specifically provided that the benefits accruing to the public roads and highways shall be *apportioned* to the county in which such public roads are situate; and, furthermore, that inasmuch as the so-called County Court Drainage Law failed to provide an adequate and appropriate remedy for the right thereby created (i. e., the *apportionment* to the county of the benefits accruing to the public roads and highways situate in such

county), therefore the drainage district may invoke any appropriate remedy known to the common law to enforce the right created by the statute, and the usual, and an appropriate, remedy is by an action and a general judgment therein. Upon the latter point, we said in the Bates County case, 269 Mo. l. c. 89: "If therefore the Legislature has failed to provide an adequate remedy for the right created, as we think is true, the drainage district may invoke any proper remedy to enforce its right. . The general rule is truly stated in 1 Cyc. 706, thus: '*Where a new right or duty is created by statute, but no remedy is pointed out, the principle of the law that there can be no wrong without a remedy has application, and one entitled to the benefit of the statutory provisions may resort to any existing remedy that will afford him adequate and proper redress.*' This rule is so universally announced that citation of authority is not required. In the case at bar the statute (Sec. 5591, R. S. 1909) authorizes the benefits accruing to public roads to be charged to the county. There is no adequate remedy provided, and the usual remedy would be an action, as here, against the county." But it is clearly apparent, from the above language used by Judge GRAVES, the author of the opinion in the Bates County case, that the remedy by action, and a general judgment therein, was properly against Bates County because the statute under construction in that case, by its precise terms, laid the liability and obligation for the payment of benefits accruing to the public roads and highways upon the county itself, and upon no other political or governmental subdivision of the State.

Unlike the plaintiff drainage district in the Bates County case, supra, however, the plaintiff drainage district in the instant case was organized, and the benefit assessments herein in question were levied, under what is commonly called the Circuit Court Drainage Law (Art. 1, chap. 28, R. S. 1919). The latter law (Sec. 4390, R. S. 1919) provides that the commissioners appointed by the circuit court "*shall assess* the amount of *benefits,* and the amount of damages, if any, that will accrue to . . . *public highways,* railroad and other rights-of-way, railroad roadways and other property from carrying out and putting into effect 'the plan for reclamation' heretofore adopted. . . . The *public highways,* railroad and other rights-of-way, *roadways,* railroad and other property *shall be assessed* according to the increased physical efficiency and decreased maintenance cost of roadways by reason of the protection to be derived from the proposed works and improvements." (Italics ours.) Unlike the County Court Drainage Law involved in the Bates County case, the Circuit Court Drainage Law herein involved specifically provides that the accruing benefits shall be *assessed* directly against the public roads and highways, and there is no further or other provision in said law for the *apportionment* of such benefits to or against

317 Mo. Sup.—60.

any political or governmental subdivision of the State within which such public roads and highways are situate. Therein lies the distinction between the Bates County case and the case at bar.

It is therefore clearly apparent, we think, that the Legislature, in the enactment of the Circuit Court Drainage Law (Art. 1, chap. 28, R. S. 1919), created a positive right, in favor of the drainage district, to the assessment of accruing benefits against the public roads and highways located within the boundaries of the drainage district. The next question before us is whether the Legislature provided an adequate and appropriate remedy for the effective enforcement of the positive right so created. By Section 4399, Revised Statutes 1919, of the Circuit Court Drainage Law, the Legislature provided: ''All drainage taxes provided for in this article, together with all penalties for default in payment of the same, all costs in collecting the same, including a reasonable attorney's fee, to be fixed by the court and taxed as costs in the action brought to enforce payment, shall, from date of filing the certificate hereinafter described in the office of the Recorder of Deeds for the county wherein the lands and properties are situate, until paid, constitute a lien, to which only the lien of the State for general state, county, school and road taxes shall be paramount, upon all the lands and other property against which such taxes shall be levied as is provided in this article.'' Section 4400, Revised Statutes 1919, of the same act provides: ''The liens established and declared in the preceding section(s) may and shall be enforced by an action on delinquent tax bills, made and certified by the county collector, which action shall be instituted in the circuit court without regard to the amount of the claim within six months after December 31st of the year for which said taxes were levied. The suit shall be brought in the corporate name of the district by its attorney against the land or lands, property or properties, on which such drainage tax has not been paid.'' The latter section further provides for foreclosure of the lien, and for sale of the lands assessed and the passing of title thereto under execution, and upon delivery of sheriff's deed in pursuance of the sale.

As we have heretofore remarked, it is apparently conceded by the parties hereto that the public roads and highways are not subject to an enforceable lien for the payment of benefit assessments, and cannot be sold under either general or special execution, or order of sale, and thereby severed from the general system of public roads and highways, because contrary to public policy, and such seems to be the trend of our own judicial announcements. But, nevertheless, we have also announced, in no uncertain language, that it is within the power of the Legislature to say, and to provide, that public property may be benefited by public improvements and accordingly assessed or charged with its proportionate share of the benefits accruing from

such public improvements. For instance, we announced in City of Clinton ex rel. v. Henry County, 115 Mo. l. c. 570: "As it is within the power of the Legislature to make property devoted to public uses liable for local assessments, and as it is contrary to public policy to permit public property to be sold, we may and do concede that the Legislature can provide for the payment of local assessments against public property out of the general treasury." And again, in Drainage District v. Bates County, 269 Mo. l. c. 84, we stated the principle thus: "In our judgment, the Legislature could say that public property may be benefited by public improvements, and could further say that for such benefits an assessment should be made, and the municipality be made to respond by a general judgment to be paid out of funds in the general treasury."

The Legislature has so spoken in the Circuit Court Drainage Law, for by Section 4390, Revised Statutes 1919, supra, it has clearly provided and required that "the *public highways . . . shall be assessed* according to the increased physical efficiency and decreased maintenance cost of roadways by reason of the protection to be derived' from the proposed works and improvements." Inasmuch as the lien provided and declared by Sections 4399 and 4400, Revised Statutes 1919, supra, is unenforcible (by foreclosure and sale) against the public roads and highways because of public policy, it follows that the Legislature, apparently through mere inadvertence, has failed to provide by, or in, the statute an adequate and appropriate remedy for the enforcement of the positive right created by the statute. But it does not follow therefrom that the plaintiff drainage district is remediless and impotent to enforce the positive right created by the statute in its favor, for, where no adequate and appropriate remedy is provided for the enforcement of the created right, the drainage district may resort to any existing remedy at common law that will afford it adequate and proper redress, and the usual and ordinary remedy is an action, and a general judgment therein, against the political or governmental subdivision of the State, chargeable with the maintenance, repair and upkeep of the public roads and highways, whatever its corporate name or identity may be. Any other conclusion on our part would amount to an utter absurdity, for it is inconceivable to our minds that the Legislature shall have declared in positive language that accruing benefits shall be assessed against the public roads and highways without also intending that such positive right so created shall be enforcible by some appropriate, adequate and effective remedy known to the law; otherwise, the positive right created would amount to nothing more than a scrap of paper, a mere dead letter, and a lifeless thing. We must necessarily assume and conclude that the Legislature intended to create a virile and effective right, one that is capable of being enforced and carried

out by a remedy complete, adequate and appropriate to the right created. Such adequate and appropriate remedy is afforded by means of an action, and a general judgment therein collectible out of the general treasury of the political or governmental subdivision of the State chargeable with, and responsible for, the maintenance, repair and upkeep of the public roads and highways in controversy.

In Platte River Drainage District v. Andrew County, 278 S. W. 387, 388, the plaintiff drainage district (as in the instant case) was organized, and the benefit assessments were levied, under the Circuit Court Drainage Law (Secs. 4378 et seq., R. S. 1919). In that case, we expressed our satisfaction with the conclusions and principles of law announced in the Bates County case, supra, and ruled that Andrew County was liable for the payment, out of its general treasury, of the benefit assessments levied against the public roads and highways situate within that county. We therein said, again speaking through GRAVES, J., who was the author of the opinion in the Bates County case: "The Bates County case had reference to a county court proceeding, but we are impressed with the view that, owing to the amendments, and the language used in the Circuit Court law, the same rule should prevail. The property of a county is benefited in each instance. *Benefits should be paid for by the party whose duty it is to keep up the public improvement.* Drainage districts help all roads within their territory, as a rule. Such benefits are public, and not private. Under the Circuit Court Act, railroad property, which is a public highway, is obligated to pay its part of a public improvement. We can see no difference between it and a public highway, which is under the control of the county." (Italics ours.)

Andrew County, however (unlike Harrison County, in which is situate the defendant herein, Trail Creek Township), at least at the time of the rendition of our opinion in the Andrew County case, had not adopted township organization, as provided in Chapter 121, Revised Statutes 1919. Andrew County not having adopted township organization by vote of the people of the county as provided in Article 1, Chapter 121, Revised Statutes 1919 (at least, the adoption of township organization by Andrew County is not disclosed by our opinion in the Andrew County case, supra), we ruled in the Andrew County case, following our ruling in the Bates County case, that Andrew County was liable for the payment, out of its general treasury, of the benefits assessed against the public roads and highways of said county, and the reason of our ruling was planted and bottomed upon the ground, as pointedly and tersely stated by Judge GRAVES in said opinion, that *"benefits should be paid for by the party whose duty it is to keep up the public improvement."* In that case, Andrew County not having adopted township organization, the duty of keeping up the public roads and highways situate within

the county devolved upon Andrew County, as the unit of government, and hence our ruling in the Andrew County case was to that effect.

But it is said by defendant organized township herein that Bates County had adopted, and was under, township organization at the time of our ruling and decision in the Bates County case, *supra*, and that we ruled therein that Bates County, as the unit of government, was liable for the benefits accruing to the public roads and highways situate within that county. But, as we have pointed out herein, the drainage district proceedings in the Bates County case were had under and by virtue of the County Court Drainage Law, and not under the Circuit Court Law, and the County Court Law, by its terms, did not provide for the assessment of benefits directly against the public roads and highways, but specifically provided that the accruing benefits shall be *apportioned* to the *county*. Hence, even though Bates County had adopted township organization, the county itself was held liable for the payment of benefits accruing to the public roads and highways therein because the drainage act therein involved and under construction specifically directed and provided that the benefits are to be *apportioned* to (and paid by) the *county*, and to no other unit of government or political subdivision of the State. The distinction between the Bates County case and the instant case, we believe, is readily apparent. The same distinction applies to what was said by SMALL, C., on the second appeal of the Bates County case, in Drainage District v. Bates County, 216 S. W. l. c. 951, wherein it was ruled that a township road is a county public road within the meaning of Section 5591, Revised Statutes 1909, which specifically required the benefits accruing to "a county or State or free turnpike road" to be *apportioned* to the county.

It is alleged in plaintiff's petition herein "that Chapter 119 of the Revised Statutes of the State of Missouri for 1909 (Chap. 121, R. S. 1919, on Township Organization) was at all the dates mentioned, and now is in force in Harrison and Mercer counties, the place where plaintiff, said drainage district, is organized and located." The legal effect of defendant's demurrer is to admit the truth of such allegation, and so we must consider, as an admitted fact upon the record before us, that Harrison County has adopted township organization as prescribed by the statute. Harrison County being under township organization at the time of the drainage district proceedings and the assessment of benefits against the public roads and highways situate within said drainage district, and such township organization being still in force and effect in Harrison County (as alleged in the petition and admitted by the demurrer), it remains for us to determine the question whether Harrison County, as the unit of government, is liable and obligated to respond to an action, and a general judgment therein payable out of its general treasury,

for the collection and payment of the benefits assessed against the
public roads and highways here in question, or whether the defend-
ant and respondent, Trail Creek Township, in Harrison County, as
the unit of government, is liable and obligated to respond to an ac-
tion, and a general judgment therein payable out of the township
treasury and funds, for the collection and payment of said benefit
assessments. The answer to this question depends, as we view it, up-
on whether it is the duty of the county, or whether it is the duty of
the organized township, under the statutory form of government in
force and effect in Harrison County, to keep up the public roads and
highways lying within the corporate boundaries of Trail Creek Town-
ship.

Section 13169, Revised Statutes 1919, of the existing statute on
"Township Organization," declares each organized township to be
a body corporate with power and capacity to sue and be sued. Sec-
tion 13216, Revised Statutes 1919, provides: "The following shall be
deemed township charges: . . .; third, the moneys authorized to
be raised by the township board of directors for any purpose, for
the use of the township." Section 13217, Revised Statutes 1919,
provides: "The moneys necessary to defray the township charges of
each township shall be levied on the taxable property in such town-
ship, in the manner prescribed in the general revenue law for state
and county purposes." Section 22, Article 10, of our State Consti-
tution provides: "The township board of directors in the several
counties under township organization, may, in their discretion, levy
and collect, in the same manner as state and county taxes are col-
lected, a special tax not exceeding twenty-five cents on each $100
valuation, to be used for road and bridge purposes, but for no other
purpose whatever; . . ." Article 12, Chapter 98, Revised Stat-
utes 1919, is a part of our statute upon "Roads and Bridges," and
pertains specifically to counties under township organization. The
said article (Secs. 10911-10936, R. S. 1919) provides a comprehensive
plan for the dragging, repairing and maintenance of township roads
by and through the so-called "contract system of working roads,"
or by and through the township board and road overseers, and for the
assessment and collection of special benefit taxes, poll taxes, and an
annual road and bridge tax to be levied upon both real and personal
property, to defray the cost of such repairs and maintenance of pub-
lic roads and highways. An examination and analysis of the afore-
mentioned statutes make clear to us the legislative intent that it shall
be the duty of the respective organized townships, and not of the
county, as the unit of government, in those counties under town-
ship organization, to keep up, maintain, drag and repair the public
roads and highways situate within the corporate boundaries of the
respective organized townships. If, as we announced in the Andrew

County case, supra, "benefits should be paid for by the party whose duty it is to keep up the public improvement," then by analogy and by application of the foregoing principle announced in the Andrew County case to the case at bar, the benefit assessments in question should be paid out of the township treasury and township funds by defendant, Trail Creek Township, whose duty it is, under the cited statutes, to keep up, drag, repair and maintain the public roads and highways situate therein. There can be little, if any, doubt that the reclamation plan and drainage improvements here in question have been a benefit to the public roads and highways situate within the defendant township, and that the cost or expense of maintenance and repairs to such public roads and highways has been decreased to some extent, at least, by reason of such drainage works and improvements. The Circuit Court Drainage Law (Sec. 4390, R. S. 1919) contemplates that the benefits assessed against the public highways shall be "according to the increased physical efficiency and decreased maintenance cost of roadways by reason of the protection to be derived from the proposed works and improvements," and the presumption necessarily arises that the physical efficiency of the public roads and highways within the corporate limits of Trail Creek Township has been increased, and the cost of maintenance thereof has been decreased to the extent or amount of the assessed benefits by reason of the drainage works and improvements.

It follows that the learned circuit court erred in sustaining defendant's demurrer to plaintiff's petition and in dismissing the petition at plaintiff's costs. The petition must be reinstated by the circuit court and leave given defendant township to answer.

The judgment *nisi* must therefore be reversed and the cause remanded to the circuit court for further proceedings in accordance with our views and conclusions herein announced. It is so ordered. *Lindsay, C.*, concurs; *Ellison, C.*, not sitting.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.*, not sitting.