**LAKEWOOD PARK CEMETERY ASSOCIATION, Plaintiff-Appellant,**

v.

**The METROPOLITAN ST. LOUIS SEWER DISTRICT et al., Defendants,**

**The Metropolitan St. Louis Sewer District and Bank of St. Louis, Defendants-Respondents.**

No. 32081.

St. Louis Court of Appeals.

Missouri.

Nov. 16, 1965.

———◆———

Eugene V. Krell, St. Louis, for appellant.

George C Hays, St. Louis, for respondent Metropolitan St. Louis Sewer Dist.

Norman Barken, of Lowenhaupt, Chasnoff, Freeman & Holland, St. Louis, for respondent Bank of St. Louis.

CLEMENS, Commissioner.

This is an action to enjoin the issuance and enforcement of special tax bills by the defendant Metropolitan St. Louis Sewer District (hereinafter referred to as MSD), and for a declaratory judgment that plaintiff's property is not subject to taxation by that defendant. Judgment was rendered against the plaintiff, and it appeals. The named defendant has filed and submitted its motion to transfer the cause to the Supreme Court.

We believe defendant's motion to transfer should be granted. Section 3 of Article V, Mo.Const., 1945, V.A.M.S., vests jurisdiction there " * * * in all civil cases where the state or any county or other political subdivision of the state * * *."

This conclusion is based on the premise that MSD is more akin to a political township (which is held to be a political subdivision) than it is to municipal corporations, such as, cities and school districts (which are held not to be political subdivisions).

█ We are aware that other municipalities, such as, cities and school, road and drainage districts, are not "political subdivisions." But their exclusion is based on reasoning not applicable to MSD. The genesis of this line of cases was in 1927 in the case of Kansas City v. Neal, 122 Mo. 232, 26 S.W. 695(2). That decision was based on a dogmatic definition, the Supreme Court tersely saying: " * * * 'Subdivision' means to divide into smaller parts the same thing or subject-matter, and no city or town in this state is a subdivision thereof * * *." This same reasoning was later applied in the line of cases excluding school, drainage and road districts from the term "political subdivision." The line began in 1900 with the case of School District No. 6 in Harrison County v. Burris, 84 Mo.App. 654, 1. c. 662, which ruled that inasmuch as a city was not a political division, neither was a school district or a levee district, because they possessed less power than a city.

Superficially, these two lines of cases would seem to apply to political townships and also exclude them from the category of "political subdivisions"; but in 1927 a third line of cases branched out, and a dozen or so cases have since held that a political township was a "political subdivision." The reasoning seems to be just as applicable to MSD as to a political township. The foundation of this line of cases was laid in the case of Harrison & Mercer County Drainage Dist. v. Trail Creek Township, 317 Mo. 933, 297 S.W. 1(1), where the Supreme Court retained jurisdiction, saying:

" * * * The township organization law provides for a distinct and separate government of the township, as a unit of government, in those counties of the state voting to adopt the township organization plan. It provides for the election of certain township officers and prescribes their governmental duties, powers, and authority. It provides for the assessment, levy, and collection of the revenue in such organized townships, not only to defray the usual and ordinary township governmental charges and expenses, but also for road and bridge uses and purposes. In other words, the general township organization law, and the constitutional authority under which such general law was enacted, in our judgment and opinion, contemplates and provides for the creation of a separate and distinct unit of government, known as an organized township, having certain governmental powers and charged with certain governmental obligations and duties, *similar to those of a county.* [Our emphasis.] Hence, we think that the framers of our Constitution of 1875, when they wrote into section 12, art. 6, of said Constitution, that the Supreme Court shall have exclusive jurisdiction on appeal, 'in cases where a county or *other* political subdivision of the state * * * is a party,' must have had in mind, in the use of the words 'or *other* political subdivision of the state,' that the General Assembly, pursuant to the authority granted by section 8, art. 9, of the same Constitution, might or would provide, by general law, for the creation of the organized township, as a unit of government, separate and distinct from the county."

· As said, our conclusion that MSD is a "political subdivision" is based on the similarity between political townships and the defendant MSD. Such townships have consistently been held to be political subdivisions because of the county-like functions they perform. The same is true of MSD.

MSD was organized pursuant to Sects. 30(a) and 30(b) of Article VI, Mo.Const., 1945. The first section authorizes the establishment of " * * * a metropolitan district or districts for the functional administration of services common to the area included therein. * * * " The latter section provides that the "plan" of such district " * * * shall become the organic law of the territory therein defined, and shall take the place of and supersede all laws, charter provisions and ordinances inconsistent therewith relating to said territory. * * * "

Under the duly adopted plan of the defendant, it does encroach upon the powers of the City and County embraced within its territory. It is empowered to protect the public health and welfare by preventing or abating the pollution of water; it is vested with complete regulatory power over the construction of all sewer or drainage facilities, whether public or private, and it is obliged to approve, revise, or reject the plans and designs of such facilities proposed to be constructed; it is empowered to subdivide the District into subdistricts which are legal entities on the same governmental level as the District but of lesser territorial extent; and it is vested with complete regulatory power over building construction and planning and zoning within the flood plain of any watercourse or stream running in or through or bordering on the District.

Re-reading the rationale in the Trail Creek Township case cited above, it seems to apply directly to the situation of the MSD. What was said of Trail Creek Township by the Supreme Court at 297 S.W. 1(1), supra, also seems true of MSD. It, too, has "governmental obligations and duties, similar to those of a county." We believe its status is that of a "county or other political subdivision" and, therefore, that the Supreme Court has jurisdiction of this appeal under Section 3 of Article V, Mo.Const., 1945. The appeal should be transferred to the Supreme Court.

PER CURIAM:

The foregoing opinion by CLEMENS, C., is adopted as the opinion of this court.

Accordingly, the case is ordered transferred to the Supreme Court.

WOLFE, P. J., and ANDERSON, and RUDDY, JJ., concur.